**SHOSO NII v. CLARK, Atty. Gen.**

**CLARK, Atty. Gen., v. SHOSO NII.**

Civ. No. 837.

United States District Court
District of Hawaii.

Jan. 26, 1949.

Shiro Kashiwa, of Honolulu, T. H., for plaintiff and counter defendant.

Ray J. O'Brien, U. S. Atty., District of Hawaii, Edward A. Towse, Asst. U. S. Atty., District of Hawaii, and Leon R. Gross, Manager Hawaii Office, Office of Alien Property, Department of Justice, all of Honolulu, T. H., for defendant and counter plaintiff.

McLAUGHLIN, District Judge.

An oral decision was rendered in this matter at the conclusion of lengthy arguments following the trial.

As a supplement thereto, this memorandum opinion is prepared to accompany the formal findings of fact and conclusions of law.

The facts found, as I have already indicated, do not bring to my mind a conviction that the plaintiff's father made a gift to him of all of his real estate in Hawaii, as alleged, in 1935.

The gift allegedly made, it is argued, was made at the last supper of the family prior to the father's permanent departure for Japan. The only evidence upon the point is the plaintiff's uncorroborated testimony to the effect that upon this occasion his father made an oral gift to the plaintiff of all of his real estate in Hawaii. Upon this bald assertion the plaintiff spells out a theory of an equitable gift good as against the Custodian, for it is admitted in the face of the record that legal title then and until the date of vesting in September 1947 remained in the father.

In an attempt to bolster up his own testimony upon this point, the plaintiff

(a) States that from the time he was graduated from grammar school and was registered to enter high school his father prevailed upon him to cease his schooling and to come into the store with him, in exchange. for which the father promised to give the plaintiff, when he went to Japan permanently, all of his property in Hawaii. This promise we may assume, though also resting upon plaintiff's testimony alone, was made, and as plaintiff says, repeated from time to time whenever plaintiff got restless and expressed a desire to return to school. Indeed, it appears that to have his way the father arranged to provide the son with both a wife and an automobile.

(b) Produces a document said to be a will executed by the father in 1932 which if valid when the father dies would give all his property to the plaintiff. This document oddly issues out of plaintiff's possession, but the fact that it bears the father's signature is corroborated. The plaintiff relies upon this document as taking the case out of the Statute of Frauds, it being a writing signed by the party through whom the Custodian claims. The writing, however, was not intended to be effective until the father died, and he is still alive.

(c) Points to the conceded fact that in 1933 the father by bill of sale gave the plaintiff his store, and put a savings account, presumably the store's, in the plaintiff's name.

(d) States that he built and paid for two houses upon the large parcel of land in dispute; collected and kept the rents; and paid all Federal and Territorial taxes with respect thereto, which were billed to his father as to real estate taxes.

(e) Points to the fact that his father prior to leaving for Japan told, as the witness Ikinaga testified, Ikinaga that he was

going to give all his property in Hawaii to the plaintiff. And further since 1936 although the father's stock in the Waipahu Garage stood in the father's name, Ikinaga paid the dividends to the plaintiff as the father had told him to do so. Not until 1939 did the corporation, however, transfer the stock to the plaintiff's name, but it did so then pursuant to the plaintiff signing the certificates "Kaneichi Nii by Shoso Nii." At this time the plaintiff had his father's power of attorney, although the stock transfer does not reflect it.

(f) Points to the fact that in 1940 the plaintiff sold, by using the power of attorney from his father, a piece of real estate standing in his father's name and kept the proceeds.

Over and against these things to which the plaintiff points and upon which he argues an equitable gift of real property are the undisputed facts that:

1. The father testified by way of deposition that prior to going to Japan he verbally gave the store to his son (he apparently forgets the bill of sale), and that after returning to Japan " * * * I made a power of attorney to Shoso Nii at the American Consulate in Kobe about December 1935, to dispose of my properties in Hawaii." This power of attorney the plaintiff himself had prepared in Hawaii and sent to his father in Japan for execution, which time of course was subsequent to the alleged equitable gift. The plaintiff is unable to explain why if the property was his as claimed, he asked for and received a power of attorney from his father instead of a deed. Clearly, the father knew how to dispose of his property effectively if he wished to, as illustrated by the bill of sale to the store and his purported will, and had he given the real estate to the plaintiff would have then or later given him a deed and not a power of attorney to deal with property he still maintained was his, the father's.

After trial and decision, the plaintiff moved to reopen the case to take the father's deposition anew. The plaintiff then produced a letter from his father saying he did not understand the interpreter. The motion was denied, for the record clearly shows that before signing Exhibit B plaintiff's sister was sworn to interpret the then typed deposition to her father before he signed it.

Maybe the father misled the son, but the uncontradicted evidence is that the father states he gave the son a power of attorney to deal with "my" property in Hawaii and the plaintiff accepted it and acted under it.

And even if I were satisfied with the plaintiff's story—which I am not—as to the larger parcel of real estate and also as to the smaller one serving as a right of way to the larger tract which the plaintiff bought but oddly took title thereto in his father's name—as to both—a further reason for concluding that the plaintiff cannot here recover is that the Custodian was entitled to rely upon the record title in the same manner and to the same extent as a bona fide purchaser would have been. Any equities which the plaintiff might have had were thus cut off when the property was vested as the father's, and as the records of the Territorial Bureau of Conveyances showed it to be.

The plaintiff having failed to prove his interest in the vested property by a preponderance of credible evidence, the prayer of the complaint is denied.

■ Upon the counterclaim the Custodian is entitled to judgment.

The withheld order enforcing the turnover directive will now issue requiring the plaintiff to turn over within 30 days $3,169.01, representing accounted for net rentals from the premises from July 1, 1941, to September 12, 1947.

The plaintiff will also account for net rentals within 30 days for the period May 1935 to July 1, 1941.

### Findings of Fact by the Court after a Trial of the Issues

This cause having come on for a trial of the issues upon the complaint filed herein by the plaintiff and the answer thereto filed by the defendant, and upon the counterclaim filed herein by the defendant and counter plaintiff and the answer to said counterclaim filed herein by the plaintiff

and counter defendant; the issues in this cause having been submitted to the Court upon the testimony and evidence and exhibits of the respective parties introduced at the trial held on November 29, 1948, November 30, 1948, and December 1, 1948, and the Court having heard the arguments of counsel and being fully advised in the premises; doth find:

1. This Court has jurisdiction of the parties and of the subject matter.

2. This action is brought under Section 9(a) of the Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix § 9(a) and for other relief.

3. These proceedings involve two adjacent parcels of real estate, one unimproved (which shall be called "the small parcel"), the other improved (which shall be called "the large parcel"), located in Waipahu, Island of Oahu, Territory of Hawaii, which were vested by the Attorney General of the United States, as successor to the Alien Property Custodian, under authority of the Trading with the Enemy Act, as Amended, U.S.C.A. Title 50 Appendix, by Vesting Order No. 9777, dated September 12, 1947, signed by the Attorney General of the United States, as successor to the Alien Property Custodian.

4. The real estate was vested as "property within the United States owned or controlled by Kaneichi Nii, a resident and a national of a designated enemy country (Japan)".

5. Kaneichi Nii, plaintiff's father, was born in Japan and came to live in the Hawaiian Islands more than thirty years ago. With the exception of certain trips which he made to Japan, Kaneichi Nii continued to live in the Territory of Hawaii until 1935, at which time Kaneichi Nii returned to Japan and said Kaneichi Nii has remained in Japan as a citizen and resident of Japan since 1935 to and including the present time. At the time of the vesting of the real estate and at the present time, Kaneichi Nii was and is a citizen and a resident of Japan. When Kaneichi Nii returned to Japan in 1935, he had property in Japan.

6. During the time that Kaneichi Nii lived in the Territory of Hawaii, he acquired various property, and the real estate which is the subject matter of this lawsuit is part of that property. Kaneichi Nii's property also included a general merchandise store located at Waipahu, Oahu, T. H., known as "K. Nii Shoten".

7. The large parcel of real estate which is the subject matter of this lawsuit was acquired by Kaneichi Nii for a recited consideration of $2,250 from T. Ota and Yasu Ota, his wife, by deed to Kaneichi Nii dated December 27, 1932, recorded December 27, 1932, in the Office of the Registrar of Conveyances for the City and County of Honolulu, T. H., at Liber 1189, pages 91-93, inclusive. The small parcel of real estate was acquired for a recited consideration of $100 by deed from T. Ota and Yasu Ota, his wife, to Kaneichi Nii, dated July 23, 1938, and recorded in the office of the Registrar of Conveyances for the City and County of Honolulu, T. H., on July 23, 1938, at Liber 1451, pages 418-420, inclusive.

8. Record title to the two parcels of real estate conveyed by the above-mentioned deeds remained in Kaneichi Nii from the date of their acquisition from T. Ota and Yasu Ota, his wife, down to and including the date that they were vested by the Attorney General of the United States. The titles to both properties were not Land Court titles.

9. The Territory of Hawaii levied and assessed real estate taxes against these parcels in the name of Kaneichi Nii and such taxes were paid by Kaneichi Nii prior to his departure to Japan in 1935, and since 1935 said taxes were paid for Kaneichi Nii by Shoso Nii in the name of Kaneichi Nii up to and including the time that the parcels were vested by the Attorney General of the United States, as successor to the Alien Property Custodian.

10. Shoso Nii, the plaintiff herein, was born on January 3, 1914, in the Territory of Hawaii, and is a citizen of the United States of America and the only son of Kaneichi Nii. Kaneichi Nii and his wife, Saku Nii, had three daughters, one of whom died. The other two daughters live with their parents in Japan. Shoso Nii made two trips to Japan, one in 1920 and one in 1941. He lived in Japan with his father,

Kaneichi Nii, from July, 1941, to October, 1947, at which time he returned to his home in Hawaii, where he has since resided.

11. As of January 2, 1933, Kaneichi Nii, the father of Shoso Nii, made, executed, and delivered a bill of sale conveying the father's store at Waipahu, Oahu, T. H., to Shoso Nii, his son. This bill of sale was duly recorded and effectively made a gift of said store to said son. A true and correct copy of said bill of sale is in evidence (Exhibit A). Said bill of sale is recorded in the Office of the Registrar of Conveyances for the City and County of Honolulu at Liber 1205, page 26.

12. In 1938 the plaintiff negotiated for the purchase of the small parcel of real estate which is part of the property involved in these proceedings. The plaintiff caused to deed to the small parcel of real estate to be made out in the name of Kaneichi Nii, his father, as grantee. At that time the plaintiff knew that title to the large parcel of real estate was also in the name of his father, Kaneichi Nii.

13. In 1939, Shoso Nii caused two powers of attorney to be drafted and forwarded to Japan, where the said powers of attorney were duly executed by Kaneichi Nii and Saku Nii (mother of the plaintiff), and said powers of attorney were acknowledged before a Vice Consul of the United States of America at Kobe, Japan, on February 7, 1949, and returned to the Territory of Hawaii and duly recorded in the Office of the Registrar of Conveyances (Exhibit No. I and Exhibit J).

14. On October 14, 1948, Kaneichi Nii, plaintiff's father, testified in these proceedings and referred to the real estate which is the subject matter of these proceedings as "my properties in Hawaii."

15. Shoso Nii, the plaintiff herein, by instrument duly executed and recorded in the Bureau of Conveyances (Exhibit C) constituted Katsutoshi Mikami, his attorney in fact, and at the time that the real estate, which is the subject matter of this lawsuit, was vested, Katsutoshi Mikami was the attorney in fact for Shoso Nii. A copy of Vesting Order No. 9777, dated September 12, 1947, was served upon Katsutoshi Mikami and received by him.

16. At the time that he filed his answer in these proceedings, the defendant filed a counterclaim under Section 17 of the Trading with the Enemy Act, as Amended, 50 U.S.C.A.Appendix, § 17, and the plaintiff filed an answer to the counterclaim of the defendant.

17. Vesting Order 9777, dated September 12, 1947, vested among other things:

"a. Real property situated at Waikele, Waipahu, Oahu, T. H., particularly described in Exhibit A, attached hereto and by reference made a part hereof, together with all hereditaments, fixtures, improvements and appurtenances, thereto, and any and all claims for rents, refunds, benefits or other payments arising from the ownership of such property, and

"b. That certain debt or other obligation owing to Kaneichi Nii, also known as Kenichi Nii by Shoso Nii, doing business as S. Nii Store, arising out of rents collected from the property described in subparagraph 2-a hereof, and any and all rights to demand, enforce and collect the same."

18. Katsutoshi Mikami, the duly authorized attorney in fact for Shoso Nii, the plaintiff, filed an accounting with the defendant and counter plaintiff for the rental income from the real estate herein involved for the period July 1, 1941 through October 1947, and a copy of the accounting submitted by said Katsutoshi Mikami is in evidence in these proceedings (Exhibit 3-D). This accounting shows that Shoso Nii is now liable to pay to the defendant and counter plaintiff the sum of $3,169.01 for the period from July 1, 1941 through October 1947. However, neither Shoso Nii nor any person acting on his behalf has made any accounting to the defendant and counter plaintiff for the income for the period from May 1935 to and including July 1941.

19. Under and by virtue of Vesting Order No. 9777, the Attorney General of the United States, as Successor to the Alien Property Custodian, is entitled to obtain from Shoso Nii, the plaintiff, an accounting and a payment of all the net income from the subject real estate for the period May 1935 to June 30, 1941, inclusive.

20. A turnover directive addressed to Shoso Nii and directing that he turn over

1008

the aforementioned sum of $3,169.01 was served on Shoso Nii on August 30, 1948, by the defendant and counter plaintiff, but up to and including the present date, Shoso Nii has not complied with the said turnover directive.

21. On October 26, 1948, the defendant and counter plaintiff filed a petition in these proceedings under Section 17 of the Trading with the Enemy Act requesting an order of Court directing Shoso Nii to pay the aforesaid sum of $3,169.01 to the counter plaintiff, but the Court held in abeyance its ruling on said petition until such time as there should be a final adjudication of the issues in this case.

### Conclusions of Law

1. The plaintiff has failed to establish his interest in the vested property in that his claim to having had at the date of vesting an equitable title by way of gift to the larger tract is not supported by convincing satisfactory evidence.

2. As to both parcels, the record title to each upon the date of vesting stood in the father's name, and the Custodian stands in the same position as a bona fide purchaser for value, thus cutting off any and all equities which the plaintiff might otherwise have had against his father with respect to the vested property.

3. Upon the counterclaim the Custodian is entitled to recover all rents collected by the plaintiff from his father's premises from May 1935 to the date upon which the obligation to pay over the same to his father was vested in the Custodian, namely September 12, 1947.

As to said net rents for the period July 1, 1941, to September 12, 1947, the plaintiff's attorney in fact during said period having accounted for the same in the sum of $3,169.01, the order to enforce the turnover directive heretofore withheld will now issue and be complied with within 30 days and moneys paid over pursuant thereto shall be credited against the judgment on the counterclaim.

For the period May 1935 to July 1, 1941, the plaintiff shall account within 30 days for net rents collected by him from said premises.