## SHOSO NII v. BROWNELL.

### No. 13450.

United States Court of Appeals
Ninth Circuit.

Aug. 21, 1953.

Shiro Kashiwa and Genro Kashiwa, Honolulu, Hawaii, for appellant.

Rowland F. Kirks, Asst. Atty. Gen., Valentine C. Hammack, Sp. Asst. to Atty. Gen., Cal., A. William Barlow, U. S. Atty., Honolulu, Hawaii, James D. Hill, George B. Searls, Irwin A. Seibel, Attorneys, Department of Justice, Washington, D. C., Leon R. Gross, Honolulu, Hawaii, for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of the United States District Court for the District of Hawaii.

The question presented is whether the findings of the trial court are supported by the evidence.

Shoso Nii, hereafter the son, brought this suit under Section 9(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9(a), to recover two parcels of real property located in the City and County of Honolulu, Territory of Hawaii. These parcels were vested, pursuant to that Act by the Attorney General of the United States, as successor to the Alien Property Custodian, upon a finding that they were the property of Kaneichi Nii, father of Shoso Nii, hereafter the father, and a citizen and resident of Japan.

Claiming to be the owner of the vested property, appellant filed with the Attorney General a Notice of Claim, alleging a gift from his father in May, 1935, orally made. The Attorney General filed a counter-claim under § 17 of the Act seeking payment of all rents collected by the son from the vested property.

The district court, after trial, concluded that the son had no interest in the vested

property, dismissed the complaint and granted the Attorney General's counter-claim. In an opinion the court held: (1) that the son had failed to establish an oral gift, and (2) that, in any event, the Attorney General by vesting was in the position of a bona fide purchaser for value and accordingly such equities as appellant might have were cut off because not recorded. Shoso Nii v. Clark, D.C., 81 F.Supp. 1003.

On appeal this court first reversed. A petition for rehearing was denied; but the original decision of this court was set aside, the judgment reversed and the cause remanded to the district court with instructions to consider:

"* * * the issue respecting the transfer of the property, vested by the appellee, to Nii by his father on his departure for Japan or on his death, and the issue respecting the claimed right to the income therefrom upon the depositions and other evidence now adduced and other evidence which may be procured and hereafter adduced." 181 F.2d 1013.

After the trial upon remand, the district court entered judgment which dismissed the complaint and granted the Attorney General's counter-claim for the net income. 98 F.Supp. 509.

Undisputed facts in the case show the following: The father, an alien Japanese, owned considerable property in Hawaii. Upon graduation from elementary school in 1928, the son went to work in the father's store. In 1933 the father, by bill of sale, conveyed the store to the son and put an existing savings account in the son's name. From 1933 to 1941, the son managed all of his father's property—collecting rent, paying taxes thereon, etc.—and reported the income thereon as his own for federal income tax purposes. The proceeds were used to support the family in Hawaii. In 1935, the father left for Japan and has since resided there. In 1939 the son caused two powers of attorney to be drafted and forwarded to Japan where they were duly executed by the father. No attempt was made to use these powers of attorney to transfer the real estate in question to the son's name. The smaller parcel

of real estate was purchased by the son in 1938, but title was taken in the father's name. Improvements of a costly nature were made upon the property by the son, although the source of the monies used for this purpose is not clear. In 1940, using the power of attorney furnished him, the son sold a piece of property not here involved, keeping the proceeds.

The son contends that he is entitled to the property on two grounds. First, that the father had made an oral gift of the property to the son and the son had made valuable improvements thereon in reliance upon this oral gift. Second, that the father had promised to transfer all of his property in the Islands to the son upon his death or upon his leaving the Islands, whichever event occurred first, in consideration of the son's foregoing high school and coming to work in the father's store.

The son claimed that on the eve of the father's departure, at a family dinner, the father made an oral gift of the properties in question to the son. To establish this oral gift, the son relied on testimony of himself, his wife, his sister, and one of several depositions given by the father. The trial court rejected the testimony of all of these witnesses as not credible. In addition, there was the undisputed testimony of one Eisuke Ikinaga, a disinterested witness, as to statements made to him by the father shortly before the father left Hawaii which evidenced an intent to make this gift. In order to take the gift out of the Statute of Frauds, the son introduced evidence showing that he had made substantial improvements in the nature of a retaining wall around the property.

At the trial the son testified and gave evidence, which was received without objection and was uncontradicted and not questioned on his cross-examination by the Attorney General, concerning a promise by the father that he would give to the son all his property in Hawaii when the father died or when he permanently left Hawaii. This promise was in consideration of the son's, already admitted to high school in 1928, giving up his education to work in the father's store. The son further testified and the evidence shows that he fully

performed the acts requested as consideration for the father's alleged promise, giving up his high school education and working in his father's store seven days a week from 6 a.m. to 11 p.m., until the father, on January 2, 1933, in part performance of the alleged promise, transferred the store to the son by bill of sale. The father at the same time transferred his bank checking and savings accounts to the son. Also, in further performance, the father advised the president of the Waipahu Garage Co., Ltd., that all the father's 311 shares therein were transferred to the son and the dividends thereon were paid to the son, the shares thereafter being transferred to the son. A will of the father's executed four years after the alleged promise, which bequeathed and devised all the father's property to the son, was introduced as showing further part performance on the part of the father.

The Attorney General argues that the evidence shows only that the son was acting as an agent for the father in managing the real property in issue. He points to the fact that the son requested a power of attorney of the father rather than deeds to the property in question; that the father had deeded the store and transferred the savings account to the son, but had not made such a formal transfer of the real property; that the additional parcel of real property was purchased in the father's name; that the father had purchased a car for the son and title to that was placed in the son's name; and that the deposition of the father, speaking of the power of attorney, stated: "After returning to Japan, I made a power of attorney to Shoso Nii * * * to dispose of *my properties* in Hawaii." (Emphasis supplied.)

The trial court held that there had been no transfer of the real property involved from the father to the son, equitable or otherwise; that the promise made by the father to the son upon the son's giving up his high school education was that the store would be transferred, and this was done by bill of sale; that at no time has either father or son treated the property here in issue as belonging to any one other than the father. Inasmuch as the actions of the father and son after the alleged transfer are as consistent with the father's ownership as with the son's, with the exception of the fact that the son reported the income from the property as his own and paid federal income taxes thereon, these findings are not plainly erroneous. Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A. Much of the evidence in the case consisted of testimony of witnesses in open court, and the trial judge was in the best position to determine the credibility of these witnesses. Quon v. Niagara Fire Ins. Co. of N. Y., 9 Cir., 190 F.2d 257. As was said in United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150:

"* * * the [appellant] has failed to establish any greater grievance here than it might have in any case where the evidence would support a conclusion either way but where the trial court has decided to weigh more heavily for the defendants. Such a choice between two permissible views of the weight of evidence is not 'clearly erroneous.' "

The judgment is affirmed.