## UNITED STATES *v.* YELLOW CAB CO. ET AL.

No. 22. Argued November 14–15, 1949.—Decided December 5, 1949.

*Charles H. Weston* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Bergson, Joseph W. Bishop, Jr.* and *J. Roger Wollenberg.*

*Jesse Climenko* argued the cause for appellees. With him on the brief was *Harold S. Lynton.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

This suit in equity, under §§ 1 and 2 of the Sherman Act, 15 U. S. C. §§ 1 and 2, originally included three charges of violation: (1) conspiracy to restrain and monopolize transportation of interstate travelers by taxicab between Chicago railroad stations and their homes, offices and hotels; (2) conspiracy to eliminate competition for the business of transporting passengers between different Chicago railroad stations; and (3) conspiracy to restrain and monopolize the sale of taxicabs by control of the principal companies operating them in Chicago, New York, Pittsburgh and Minneapolis. On a previous appeal this Court held the first of the charges not to state a case within the statute, and that charge no longer concerns us. *United States* v. *Yellow Cab Co.,* 332 U. S. 218. The court below found that the Government failed to prove the second charge and no appeal is taken from that part of the judgment, so that charge has been eliminated. We have held that the residue of the complaint, embodying the third charge, alleges a cause of action within the statute, but only on the expressed assumption that the facts alleged are true, *United States* v. *Yellow Cab Company, supra,* at 224; but the trial court has found that the Government, at the trial, has failed on all the evidence to prove its case. 80 F. Supp. 936. The cause is before us by a direct appeal under the Expediting Act, 15 U. S. C. § 29, and not by an exercise of our discretionary jurisdiction.

The first question proposed by the Government is whether the evidence sustains the findings of fact by the District Court. This is the basic issue, and the Government raises no question of law that has an existence independent of it. This issue of fact does not arise upon the trial court's disregard or misunderstanding of some def-

inite and well-established fact. It extends to almost every detail of the decision, the Government saying that the trial court "ignored . . . substantially all of the facts which the Government deemed significant."

What the Government asks, in effect, is that we try the case *de novo* on the record, reject nearly all of the findings of the trial court, and substitute contrary findings of our own. Specifications of error which are fundamental to its case ask us to reweigh the evidence and review findings that are almost entirely concerned with imponderables, such as the intent of parties to certain 1929 business transactions, whether corporate officers were then acting in personal or official capacities, what was the design and purpose and intent of those who carried out twenty-year-old transactions, and whether they had legitimate business motives or were intending to restrain trade of their competitors in car manufacture, such as General Motors, Ford, Chrysler and Packard.

These were the chief fact issues in a trial of three weeks' duration. The Government relied in large part on inferences from its 485 exhibits, introduced by nine witnesses. The defendants relied heavily on oral testimony to contradict those inferences. The record is before us in 1,674 closely-printed pages.

The Government suggests that the opinion of the trial court "seems to reflect uncritical acceptance of defendants' evidence and of defendants' views as to the facts to be given consideration in passing upon the legal issues before the court." We see that it did indeed accept defendants' evidence and sustained defendants' view of the facts. But we are unable to discover the slightest justification for the accusation that it did so "uncritically." Also, it rejected the inferences the Government drew from its documents, but we find no justification for the statement that it "ignored" them. The judgment below is supported by an opinion, prepared with *obvious* care,

which analyzes the evidence and shows the reasons for the findings. To us it appears to represent the considered judgment of an able trial judge, after patient hearing, that the Government's evidence fell short of its allegations—a not uncommon form of litigation casualty, from which the Government is no more immune than others.

Only last term we accepted the view then advanced by the Government that for triers of fact totally to reject an opposed view impeaches neither their impartiality nor the propriety of their conclusions. We said, "We are constrained to reject the court's conclusion that an objective finder of fact could not resolve all factual conflicts arising in a legal proceeding in favor of one litigant. The ordinary lawsuit, civil or criminal, normally depends for its resolution on which version of the facts in dispute is accepted by the trier of fact. . . ." *Labor Board* v. *Pittsburgh Steamship Co.,* 337 U. S. 656, 659.

Rule 52, Federal Rules of Civil Procedure, provides, among other things:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Findings as to the design, motive and intent with which men act depend peculiarly upon the credit given to witnesses by those who see and hear them. If defendants' witnesses spoke the truth, the findings are admittedly justified. The trial court listened to and observed the officers who had made the records from which the Government would draw an inference of guilt and concluded that they bear a different meaning from that for which the Government contends.

It ought to be unnecessary to say that Rule 52 applies to appeals by the Government as well as to those by other litigants. There is no exception which permits it,

even in an antitrust case, to come to this Court for what virtually amounts to a trial *de novo* on the record of such findings as intent, motive and design. While, of course, it would be our duty to correct clear error, even in findings of fact, the Government has failed to establish any greater grievance here than it might have in any case where the evidence would support a conclusion either way but where the trial court has decided it to weigh more heavily for the defendants. Such a choice between two permissible views of the weight of evidence is not "clearly erroneous."

*Judgment affirmed.*

MR. JUSTICE DOUGLAS and MR. JUSTICE CLARK took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, with whom MR. JUSTICE REED concurs, dissenting.

The evidence showed here without dispute that a manufacturer of taxicabs through a series of stock purchases obtained 62% of the stock of a corporation which itself had large stock interests in local companies operating taxicabs. The man who was president, general manager, director, and dominant stockholder in the taxicab manufacturing company also held an important managerial position in the corporate network that carried on the business of the local taxicab operating companies. The findings of the District Court were that the affiliated ownership, management and control were not the result of any deliberate or calculated purpose of the manufacturing company to control the operating companies' purchases of taxicabs, and that no compulsion had been exercised to control such purchases. Consequently the trial court held that despite the integration of corporate management there was no violation of the Sherman Act. I think

that the trial court erred in holding that a formed intent to suppress competition is an indispensable element of violations of the Sherman Act.

In *United States* v. *Griffith,* 334 U. S. 100, 105, 106, we said:

> "It is, however, not always necessary to find a specific intent to restrain trade or to build a monopoly in order to find that the anti-trust laws have been violated. It is sufficient that a restraint of trade or monopoly results as the consequence of a defendant's conduct or business arrangements. *United States* v. *Patten,* 226 U. S. 525, 543; *United States* v. *Masonite Corp.,* 316 U. S. 265, 275. To require a greater showing would cripple the Act. . . . [E]ven if we accept the District Court's findings that appellees had no intent or purpose unreasonably to restrain trade or to monopolize, we are left with the question whether a necessary and direct result of the master agreements was the restraining or monopolizing of trade within the meaning of the Sherman Act."

Measured by this test the findings of the trial court here fail to support its legal conclusions that no violation of the Sherman Act had been proven. Since the trial court went on the assumption that subjective intent to suppress competition is an essential ingredient of Sherman law violations, it did not make specific findings as to whether the freedom of the taxicab companies to buy taxicabs from other manufacturers had been hobbled by the defendants' business arrangements, regardless of compulsion or intent to destroy competition. There was much evidence tending to show this hobbling of competition. I think that the allegations of the complaint were sufficiently broad to present this issue for adjudication by the court. Moreover, presentation of the issue was emphasized by the

fact that a large amount of evidence to prove successful accomplishment of monopoly or restraints of trade was admitted without any objection by the defendants based on variance from the pleadings. See Federal Rule of Civil Procedure 15 (b).

There is evidence in the record to the effect that as a result of the corporate arrangements here the manufacturing company obtained sufficient power to dictate the terms of purchases by the local companies; there is also evidence that those companies did thereafter limit their purchases of taxicabs almost exclusively to those sold by the manufacturing defendant. Moreover, the evidence shows that such taxicabs were in some instances bought by the local company at prices above those paid by other taxicab companies wholly free to buy taxicabs in a competitive market. This evidence, if accepted, would support a finding of illegal restraint of trade or monopoly under the *Griffith* rule. I think the cause should be remanded for the trial court to consider the evidence and make findings on this aspect of the case.