## UNITED STATES v. CERTAIN LANDS IN CITY OF NEWARK, N. J., etc., et al.
### No. 9932.

United States Court of Appeals
Third Circuit.

Argued Oct. 13, 1949.

Decided June 15, 1950.

Arthur E. Dienst, Newark, N. J., for appellant.

G. Dixon Speakman, Newark, N. J. (Toner, Speakman & Crowley, Newark, N. J., on the brief), for appellees.

Before BIGGS, Chief Judge, KALODNER, Circuit Judge and FEE, District Judge.

KALODNER, Circuit Judge.

Dissatisfaction with the amount of compensation awarded in the court below as "just" for the taking of a leasehold by the United States is the source of this appeal. The only issue raised is whether the learned trial judge applied the evidence submitted to him in such a way as to have commited reversible error.

On February 13, 1946, the United States, exercising its sovereignty and pursuant to 40 U.S.C.A. § 258a, upon a Declaration of Taking and deposit of $650,000, condemned the title in fee simple to the office building known as the Globe Indemnity Building at 20 Washington Place, Newark, New Jersey. Since then, the "just compensation" for the building has been determined and settled and the court below has been concerned with the distribution of the fund to various parties in interest. One of such parties is the appellant, Martin Tittman, who at the time of the condemnation was a tenant in possession operating a luncheonette in an area consisting of approximately 507 square feet at the westerly end of the Halsey Street corridor on the first floor of the Globe Indemnity Building. Tittman's lease, which was originally executed on November 29, 1944, and which he acquired by assignment from the original lessee in October, 1945, was due to expire on November 30, 1947, without right of renewal. The United States required Tittman to vacate, and he in fact vacated the premises on March 29, 1946. Quite clearly, the remaining nineteen months of the leasehold were appropriated by the United

States, and it is for this remainder that Tittman seeks "just compensation". United States v. Westinghouse Electric & Manufacturing Co., 1950, 70 S.Ct. 644.

The total rental provided for in the lease was $85.00 per month. Upon the evidence submitted, the trial court concluded that the market value of the remaining term was $1926.60. This sum, less the rent reserved, $1615, i. e., $311.60, constitutes the amount awarded to Tittman and which he now contests as inadequate.

Tittman acquired the lease involved from his assignor as part of a transaction, in August, 1945, whereby he purchased from his assignor the luncheonette on the premises. For the price of $5500 Tittman received the equipment, stock, good will and business, a limited guarantee of minimum business, a promise on the part of the seller not to engage in a similar business within 700 yards of the premises for three years, and a promise on the part of the seller to aid Tittman in obtaining either a new lease or the consent of the owner to the assignment of the existing lease. At the time of the purchase, the luncheonette was grossing about $500 per week, but soon after Tittman took over, the gross sales increased to $625 per week, upon which Tittman realized a net return of $100 per week.

The law is clear and settled that since the entire balance of Tittman's leasehold interest was taken, "The measure of damages is the difference between the value of the use and occupancy of the leasehold for the remainder of the * * term * * * less the agreed rent which the tenant would pay for such use and occupancy." United States v. Petty Motor Co., 1946, 327 U.S. 372, 381, 66 S.Ct. 596, 601, 90 L.Ed. 729. And despite Tittman's testimony that he would have earned $8400 in the remaining months of tenancy due him under the lease, "evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings." United States v. Petty Motor Co., supra, 327 U.S. at pages 377-378, 66 S.Ct. at page 599.

Because leases like that here involved are generally included in the sale of businesses operated on the premises, as indeed occurred in this instance, the difficulty of separating the leasehold value from the business value was especially hard to overcome. At least one of the three witnesses who testified on Tittman's behalf was unable to express a value of the lease apart from the business; he did say that the short remainder would decrease the value of the business by 50%, and consequently estimated the value of the business at $6000. Another of his experts attempted to fix a value for the lease based on a percentage of the gross receipts of the business, estimating that value at approximately $3000. The third expert estimated the value of the lease at $4000. But the basis for this estimate was under any account confused, being premised primarily on a comparison with sales of business which included leases. Moreover, this witness expressed the view that good will was part of the lease. On the other hand, the expert produced by the owner testified that rentals of premises like those covered by the lease in this case were, in the vicinity, mostly determined on a flat rental, and it was his opinion that the instant lease had no value in excess of the rent reserved.

The controversy sub judice is in this Court one to which Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., applies. Rule 81(a) (7) so provides: United States v. Lambert, 2 Cir., 1944, 146 F.2d 469, 471. We should not, therefore, reverse the factual determination of value made by the District Judge unless it is clearly erroneous: unless on the entire record we are definitely and firmly convinced that a mistake has been committed. United States v. U. S. Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; Cf. United States v. Yellow Cab Co., 1949, 338 U.S. 338, 70 S.Ct. 177; Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 70 S.Ct. 854. That conviction we do not have. The District Judge did not find Tittman's experts, whom he saw and heard, convincing, and certainly his judgment in this respect should not be

lightly set aside. The evidence clearly indicates that the value of the lease was substantially affected by its short unexpired term. There was evidence that the percentage method which Tittman advocated involves a breakdown of the gross receipts into categories of merchandise sold, and this was not attempted. Likewise, the evidence certainly supports the conclusion that a flat rental rate is a method of evaluation of the leased premises properly employable in this instance. Finally, it is difficult to see that clear error exists, for the evidence of value was highly conflicting and the compensation awarded is within the range of the evidence. Porrata v. United States, 1 Cir., 1947, 158 F.2d 788, 791. Although Tittman relies to some extent upon the fact that the court below stated the value of the lease in terms of dollars per square foot, we deem this without significance since it is plainly a medium of expression chosen to frame the ultimate conclusion.

For the reasons stated, the judgment of the District Court will be affirmed.