**J. P. TONKOFF, individually and as trustee, Appellant,**

v.

**Clay BARR and Betty Barr, husband and wife, Appellees.**

**No. 15022.**

United States Court of Appeals
Ninth Circuit.
May 28, 1957.

Tonkhoff, Holst & Hopp, Yakima, Wash., Fertig & Colombo, Portland, Or., for appellant.

Maguire, Shields, Morrison & Bailey, Randall B. Kester, Koerner, Young, Mc-Colloch & Dezendorf, William E. Dougherty, Howard K. Beebe, Portland, Or., for appellees.

Before STEPHENS and BARNES, Circuit Judges, and LINDBERG, District Judge.

LINDBERG, District Judge.

This action was commenced in the United States District Court for the Dis-

trict of Oregon by reason of diversity of citizenship. Appellant J. P. Tonkoff, individually and as trustee for E. J. and Viola Welch, husband and wife, and John W. Cramer, beneficiaries under a trust agreement, sought damages from appellees, Clay Barr and Betty Barr, husband and wife, allegedly arising from the failure of appellees in the performance of a trust and assignment of crops agreement executed with respect to crops grown in 1953 on the property known as the Meiss Ranch in northern California.

The following we believe to be a fair summary of the facts and contentions of the parties as disclosed by the record.

The Meiss Ranch is located in Siskiyou County, California. It contains about 13,000 acres, some 3,000 to 4,000 being farm land and the remainder being in pasture and lake. J. C. Stevenson had previously owned and operated the ranch but had sold it to Frank Hofues and A. G. Kirschmer in 1952. Hofues and Kirschmer hired J. C. Stevenson, Jr. to manage the ranch when they took it over and entered into a written management agreement with him in March, 1953.

Early in May, 1953 Hofues and Kirschmer visited the ranch and found the operations unsatisfactory. They then contacted appellees and made a written lease with them to farm the ranch for the remainder of the 1953 season with certain rights for the future. Appellees were to bear all expenses from then on and upon sale of the produce were to receive one-half of the price. The lease was subject to three existing leases to other persons for smaller acreage and also to the rights of J. C. Stevenson for pasturage. The lease was also subject to whatever rights arose from the management contract of J. C. Stevenson, Jr. When the lease was made about 1,200 acres already had been planted to grain. Appellees then planted about 250 acres of rye, 132 acres of wheat and 1,035 acres of oats. Appellee Barr remained on the ranch from May 7th, 1953, when he took over under the lease, until June 5, 1953, when he went to Spo-

kane, where he was defendant in a civil action in the Superior Court of the State of Washington for Spokane County. Appellant Tonkoff was attorney for E. J. Welch, plaintiff in said action and Horton Herman was attorney for defendants (appellees herein). During the course

of the trial appellee Barr offered to settle the action by assigning appellees' right, title and interest in the crops then growing on the Meiss Ranch under certain conditions. Such offer was accepted and a declaration of trust was then executed by all parties to that suit.[1]

1.          "Declaration of Trust

"Whereas, the undersigned, J. P. Tonkoff and Horton Herman, are the assignees named in that certain written Assignment, dated June 10, 1953, executed by Clay Barr and Betty Barr, his wife, as assignors, which assignment is in words and figures as follows, to-wit:

"Assignment

"This Agreement Made and entered into this 10th day of June, 1953, by and between Clay Barr and Betty Barr, his wife, hereinafter called Assignors, and J. P. Tonkoff and Horton Herman, hereinafter called Assignees.

"Whereas, the above named Assignees are the attorneys respectively for E. J. Welch and Viola A. Welch, his wife, and Clay Barr and Betty Barr, his wife; and said parties being involved in a civil action for damages, and;

"Whereas, Roland P. Charpentier and Effie G. Charpentier, his wife, being represented by John W. Cramer of Lewiston, Idaho, are judgment creditors of E. J. Welch and wife; and;

"Now, Therefore, it is mutually agreed as follows:

"1. The Assignors do hereby assign to the assignees for the benefit of the Assignees and Roland P. Charpentier and his wife and E. J. Welch and Viola Welch, his wife, and John W. Cramer all of their right, title and interest in and to the growing crops to be harvested in 1953 on that certain property located in Siskiyou County, California, and known as the Meiss Ranch, which ranch is in the possession of the Assignors as Lessees under that certain lease dated May 7, 1953, by and between Frank Hofues and Dorothy Hofues, his wife, and Albert G. Kirschmer and Virginia Kirschmer, his wife, as Lessors subject, however, to the following provisions:

"a. The Assignors agree to harvest said crops without interference from the Assignees and/or the persons for whom they are taking this assignment, and shall retain out of the Lessees' interest in said crop the sum of Fifteen Thousand Dollars ($15,000.00) to cover their cost of harvesting.

"b. The Assignors herein agree upon the harvest of said assigned crop to deposit the same at their expense in a

warehouse or warehouses and to have warehouse receipts therefor issued in the names of the Assignees. It is agreed that at the earliest practical date, not in any event to be later than November 15, 1953, said crop to be sold up to the extent of Seventy-two Thousand Five Hundred Dollars ($72,500.00) net to the Assignees; and the Assignees shall upon the receipt of said sum endorse and deliver over to the Assignors all warehouse receipts, if any, representing any of said crops not so sold.

"c. The Assignors agree to notify the Assignees in writing of the commencement of harvesting at least ten (10) days before said harvest, said notice to be addressed to J. P. Tonkoff, 616 Miller Building, Yakima, Washington, and Horton Herman, 215 Paulsen Building, Spokane, Washington.

"The execution and delivery of this assignment by the Assignors to the Assignees is made and accepted in full settlement of all claims, demands, actions and causes of action of any and every kind and nature in any way arising out of or pertaining to the subject matter of that certain law suit No. 135666 now pending in the Superior Court in and for the County of Spokane, State of Washington, wherein the said Welchs are named as plaintiffs and the Assignors herein and Sterling Higgins are named as defendants; and all claims of every kind and nature against the said Clay Barr and wife in any manner arising out of the sale, lease or operation of that certain property known as the Pair-A-Dice Club in the City of Lewiston, Idaho.

"The Assignors, Clay Barr and Betty Barr, his wife, warrant that they are the owners of a fifty per cent (50%) interest in the crop growing on the above described property; and warrant that there is planted to crop on the above described farm property approximately Twenty-eight Hundred (2800) acres; and that the Assignors' interest in said crop is free and clear from any encumbrance.

"The Assignors herein agree to farm said lands in a good and farmerlike fashion and in accordance with the terms of the aforementioned lease, it being understood and agreed that the Assignors

Appellee Barr has been a farmer all his life, having farmed in the states of Washington, Montana and Oregon. He has farmed on stock farms, grain farms

are not guaranteeing any particular yield, and shall not be liable for crop failure due to any cause beyond the control of the Assignors.

"In Witness Whereof, the parties to the within instrument have executed the same the day and year first above written.

"Clay Barr
"Betty Barr
"Assignors
"J. P. Tonkoff
"Horton Herman
"Assignees

"State of Washington,
"County of Spokane—ss.

"I, the undersigned, a Notary Public in and for the above-named county and state, do hereby certify that on this 10th day of June, 1953, personally appeared before me Clay Barr and Betty Barr, his wife, to me known to be the individuals described in and who executed the within instrument, and acknowledged that they signed and sealed the same as their free and voluntary act and deed, for the uses and purposes therein mentioned.

"Given under my hand and official seal the day and year last above written.

"(Seal) Mabel Jackson,
"Notary Public in and for the State of Washington, residing at Spokane.

"Approved and consented to by the following: E. J. Welch, Viola Welch, Roland P. Charpentier, Effie J. Charpentier, John W. Cramer.

"And Whereas, it is the desire of the assignees to set forth in writing the terms and conditions under which they accepted and hold said assignment;

"Now, Therefore, the following,

"Declaration

"I, the undersigned, J. P. Tonkoff and Horton Herman do hereby declare that they hold said assignment as Trustees for the use and benefit of themselves and for the use and benefit of the following named persons, to-wit: E. J. Welch and Viola A. Welch, his wife; Roland P. Charpentier and Effie G. Charpentier, his wife, and John W. Cramer.

"That the net proceeds of the sale of the crop referred to in said assignment are to be divided and paid as follows:

"To J. P. Tonkoff .......... $15,000.00
"To Horton Herman ...... 10,000.00
"To E. J. Welch and Viola A. Welch, his wife ...... 27,500.00
"To Roland P. Charpentier and Effie G. Charpentier, his wife ............... 15,000.00
"John W. Cramer .......... 5,000.00
"$72,500.00

"It is understood and agreed that in the event the net proceeds of the sale of said crop referred to in the assignment that are received by the assignees does not equal $72,500.00, then such lesser amount as is received by said assignees, who are the Trustees in this Declaration of Trust, shall be divided and paid to the above named parties on a pro rata basis in proportion that the amount each would receive if the net proceeds of sale equal $72,500.00 bears to the amount of the actual net proceeds received.

"It is specifically understood and agreed that the obligation of the undersigned, J. P. Tonkoff and Horton Herman, is confined solely to disbursement of funds in the manner aforesaid actually received by them pursuant to the terms of the aforementioned assignment.

"Any assignment or other transfer by any of the beneficiaries named in this Declaration of Trust shall not be binding upon the undersigned Trustees, J. P. Tonkoff and Horton Herman, unless such assignment or transfer is in writing and an executed copy thereof filed with each of the named Trustees herein.

"It is understood that each of the beneficiaries in this Declaration of Trust shall place his and her signature hereon, which shall ratify and confirm this document; shall constitute their approval hereof and their agreement to the division of funds in the manner hereinabove specifically set forth and, by so signing this document, the said E. J. Welch and Viola A. Welch, his wife, and Roland P. Charpentier and Effie G. Charpentier, his wife, and John W. Cramer do thereby reiterate and confirm the fact that, irrespective of the amount or amounts received by each of them pursuant to the terms of said assignment, the execution of such assignment hereinabove quoted and their approval and consent thereto, constitutes a full settlement of all claims, demands, actions and causes of action of any and every kind and nature that any of them had, have or may have against Clay Barr and Betty Barr, his wife, in any manner arising out of the purchase, sale, lease or operation of that certain property known as the Pair-A-Dice Club in the City of Lewiston, Idaho, or in any manner arising out of or pertaining to the subject matter of that certain lawsuit, No. 135666, in the Superior Court of the State of Washington, in and for the County of Spokane, wherein the said E. J. Welch is named as plaintiff,

and had done "a little irrigation." At the time he took over the Meiss Ranch he was operating a 2,300 acre wheat ranch in northern Oregon. He continued to operate both the Oregon ranch and the Meiss Ranch. The Meiss Ranch operations proved not entirely successful. James C. Stevenson, Jr., acting as manager for Hofues and Kirschmer as owners, and Edward J. Welch, acting for the trust, sold the grain to Kerr Gifford Co., Inc.

Appellant brought this action against appellees and Kerr Gifford & Co., Inc., alleging as against appellees the declaration of trust, that appellees operated the Meiss Ranch in 1953 under lease and that they committed certain named wrongs (later referred to) against appellant. As against Kerr Gifford & Co., Inc., appellant alleged that Kerr Gifford & Co., Inc. bought the crops for approximately $70,000, paying one-half of said sum to the owners of the Meiss Ranch and refusing to pay any of such proceeds to appellant. Appellant prayed as against Kerr Gifford & Co., Inc., for one-half of the proceeds of such sales with interest, and as against appellees for $72,500 with interest, less such sum as may be paid by Kerr Gifford & Co., Inc. by virtue of the action.

Appellees answered, generally admitting the execution of the declaration of trust, that appellees operated the Meiss Ranch and that the grain was sold to Kerr Gifford & Co., Inc., and denying the other allegations, and affirmatively alleging that appellees had sold, assigned and transferred to A. G. Kirschmer the $15,000 which appellees were to receive as expenses under the declaration of trust.

Kerr Gifford & Co. answered, admitting certain allegations of the complaint and denying certain others on information and belief. They further prayed for interpleader and, so far as material herein, alleged that they had purchased the grain grown on the Meiss Ranch for the full price of $88,746.53, and held the sum of $44,373.28 for the persons entitled thereto and prayed that the court order appellant, appellees and A. G. Kirschmer to interplead their respective demands and determine which of said parties was entitled to said sum of $44,373.28, or a portion thereof; and that the court order Kerr Gifford & Co., Inc. discharged upon payment of said sum into the registry of the court, and for attorneys' fees and costs.

Appellant subsequently filed a reply to answer of appellees which, by reason of the course which the case subsequently took, we believe is immaterial.

We omit mention of various pleadings which we regard as being immaterial to this opinion.

An order of interpleader was entered September 15, 1955 and appears in the margin.[2]

and Clay Barr and Sterling Higgins are named as defendants.
"Dated this 10th day of June, 1953.
"/s/ J. P. Tonkoff
"/s/ Horton Herman
"Trustees
"The undersigned do hereby approve of and consent to and join in the foregoing Declaration of Trust. Signed: J. P. Tonkoff, Horton Herman, E. J. Welch, Viola Welch, Roland P. Charpentier, Effie G. Charpentier, John W. Cramer."

2. "The above-entitled proceedings came on for pretrial conference on September 12, 1955, and plaintiffs appeared by J. P. Tonkoff, individually and as attorney for plaintiffs, and by Virgil Colombo, of their attorneys; defendants Clay Barr and Betty Barr appeared by Randall B. Kester of Maguire, Shields, Morrison & Bailey, their attorneys; the additional defendant A. G. Kirschmer appeared by William E. Dougherty, his attorney; and defendant Kerr Gifford & Co. Inc. appeared by Harry J. DeFrancq of Koerner, Young, McColloch & Dezendorf, its attorneys; and the Court having heard argument of counsel with respect to the answer and counterclaim for interpleader of defendant Kerr Gifford & Co. Inc., it is

"Ordered that defendant Kerr Gifford & Co., Inc. is discharged from any and all further liability to either the plaintiffs, the defendants Clay Barr and Betty Barr, or the additional defendant A. G. Kirschmer because of the payment into the registry of this Court by it of the sum of $44,373.28 on May 20, 1954; and it is further

Appellees filed their claim in interpleader on October 25, 1955 as appears in the margin.[3] The record fails to disclose that appellant complied with the court's order of interpleader.

■ In the absence of a pretrial order we must assume that during the trial appellant relied on the pleadings contained in the transcript of record. While such pleadings contain much irrelevant matter it would seem that appellant relied on the following allegations:

That at the time of the execution of the declaration of trust the crops growing on the Meiss Ranch were in good condition; that appellees warranted that there were approximately 2,800 acres of crops growing when in fact such warranty was false and untrue and that only 2,668 acres of crops were growing; that appellees refused, failed and neglected to farm said property in a good and farmerlike fashion; that appellees failed, refused and neglected to properly operate said ranch and care for said growing crops; that appellees failed, refused and neglected to properly irrigate; that appellees plowed under 120 acres of oats without the consent of the trustees or beneficiaries; that appellees failed, refused and neglected to harvest the crops in a farmerlike fashion so that approximately 10% of the grain crops were either not harvested or wasted; that appellees lost approximately 5% of the crop on the road while transporting same to market; and that had appellees cultivated, farmed and harvested in a good and farmerlike fashion the crops produced would have brought on the market in excess of $250,000, $125,000 of which would have been available to pay appellant and his beneficiaries the sum of $72,500.

Following the trial the case was submitted and shortly thereafter the trial court rendered his memorandum decision against appellant.[4]

"Ordered that the plaintiffs, the defendants Clay Barr and Betty Barr, and the additional defendant Albert G. Kirschmer interplead their respective demands and claims to said fund of $44,373.28; and it is further

"Ordered that the determination of the amount, if any, to be paid to the defendant Kerr Gifford & Co. Inc. out of said fund for costs and attorneys' fees be deferred pending further proceedings herein; and it is further

Ordered that jurisdiction of these proceedings be retained by this Court for the purpose, inter alia, of determining the rights of the plaintiffs, the defendants Clay Barr and Betty Barr, and the additional defendant A. G. Kirschmer in and to the said fund.

3. "Come now defendants Clay Barr and Betty Barr, pursuant to the Order of Interpleader entered herein on September 15, 1955, and without waiving their objections to interpleader as set forth in their amended answer on file herein, assert the following claim:

"I.

"That of the fund of $44,373.28 deposited in court by Kerr Gifford & Co., Inc., the sum of $15,000 was expressly reserved to these defendants by the assignment of June 10, 1953, to cover their cost of harvesting; that their cost of harvesting in fact exceeded the amount of $15,-000; that on or about October 12, 1953, these defendants, for value received, sold, assigned and transferred to A. G. Kirschmer, whose residence was and is Amarillo, Texas, said sum of $15,000 to which these defendants were entitled from the proceeds of the 1953 grain crop from the Meiss Ranch; that notice of said assignment was duly given to Kerr Gifford & Co.; that said assignment is still in full force and effect; and that said sum of $15,000 is now owned by said A. G. Kirschmer, and plaintiffs have no rightful claim thereto.

"II.

"That pursuant to the consent of said A. G. Kirschmer, these defendants hereby assert a claim to said sum of $15,000 out of the proceeds now on deposit with this court.

"Wherefore, these defendants pray for judgment against the fund now on deposit with this court in the amount of $15,000, in favor of these defendants as trustees for said A. G. Kirschmer."

4. Granting plaintiffs complete sincerity, I cannot accept their view of the controlling facts of the case. Landowner Kirschmer exonerates defendant and I do the same. One of plaintiffs' leading witnesses had an obvious interest in ex-

The court made and entered findings of fact and conclusions of law, the pertinent parts, so far as this appeal is concerned, appearing in the margin.[5]

A somewhat detailed summary of the facts and contentions of the parties have been set forth because as appellant frankly states in his brief, "The issues presented by the appeal are factual."

■■ Appellant's specifications of error may be summarized as follows: The trial court erred (1) in finding that the management contract of J. C. Stevenson, Jr. remained in effect through the 1953 harvest season; (2) in finding that appellees did not make any false or untrue warranties with respect to the acreage of the growing crops on the Meiss Ranch; (3) in finding as a fact that appellees did not fail, refuse or neglect to farm the Meiss Ranch in a good and farmerlike fashion; (4) in finding as a fact that appellees did not breach or fail to perform any covenants, provisions or conditions of the assignment dated June 10, 1953 [6] or any promise or agreement subsequent thereto; (5) in failing to make findings of fact contrary to the findings of fact referred to in the preceding specifications 2, 3 and 4; (6) in concluding that appellant is not entitled to judgment

against appellees for the amount prayed for in the complaint; and (7) in entering a judgment for appellees and against appellant.

The appellant does not argue that the findings if sustained do not adequately support the conclusion of law and judgment. Therefore, we may confine our consideration to the question of whether there is evidence which properly can support the findings as made.

As to the first specification of error which relates to the trial court's finding numbered II [7] admittedly there was a written management contract entered into in March, 1953 between Stevenson, Jr. as manager and Kirschmer and Hofues as owners for the harvest year of 1953 and there was no evidence of its rescission. Stevenson, Jr. testified there was no change in the arrangement because of the Barr lease and that he still regarded himself as the manager under his agreement. Further, he continued to live and supervise the place throughout the season and signed on behalf of the owners the sales contract entered into with Kerr Gifford & Co., Inc. for the crop here involved. The Barr lease may have served to modify the agreement between the owners and Stevenson, Jr. but we

---

culpating himself, another in paying off an old grudge.

The case has been hard fought, and the parties no doubt will desire to appeal. Will the attorneys please submit orders that will clean the record, so that all of the difficult questions that have been raised during the long drawn out proceedings may be properly presented to the Court of Appeals.

No personal judgment for costs.

5. "II.

"On or about the 7th day of May, 1953, defendants Barr entered into a lease of the Meiss Ranch, located in Siskiyou County, California, from the owners, Frank Hofues and Dorothy Hofues, husband and wife, and Albert G. Kirschmer and Virginia Kirschmer, husband and wife, which lease provided among other things that the lessors would receive as rental 50% of the gross proceeds received by lessees from the operation of said ranch. Prior to said lease said ranch had been operated by J. C. Steven-

son, Jr., as manager under a written contract with the owners, and said management contract remained in effect through the 1953 harvest season.

* * * * *

"X.

"Plaintiff has failed to sustain the claims alleged in the complaint, and the court finds:

"(a) That the defendants Barr did not make any false or untrue warranty with respect to the acreage of growing crops on the Meiss Ranch.

"(b) That the defendants Barr did not fail, refuse or neglect to farm the Meiss Ranch in a good and farmerlike fashion;

"(c) That the defendants Barr did not breach or fail to perform any covenant, provision, or condition of the assignment dated the 10th day of June, 1953, or any subsequent promise or agreement."

6. The Declaration of Trust, supra, footnote 1.

7. See marginal note 5.

cannot agree that the finding that the management contract remained in effect through the 1953 harvest season is clearly erroneous.

In the second specification of error appellant attacks the finding of the trial court, paragraph X, wherein it is found that the appellees "did not make any false or untrue warranties with respect to the acreage of growing crops on the Meiss Ranch." The alleged warranty upon which appellant relies is contained in the assignment executed by appellees (plaintiff's Exhibit 5) and appearing as part of the declaration of trust.[8] The pertinent paragraph reads as follows:

"The Assignors, Clay Barr and Betty Barr, his wife, warrant that they are the owners of a fifty per cent (50%) interest in the crop growing on the above described property; and warrant that there is planted to crop on the above described farm property approximately Twenty-eight Hundred (2800) acres; and that the Assignors' interest in said crop is free and clear from any encumbrance."

The record fails to disclose evidence that the acreage in crops was ever accurately surveyed. All the witnesses testified merely as to their estimates of acreage. Illustrative is the testimony of appellant's witness, J. C. Stevenson, Jr.:

"A. Mr. Barr leased this farm and took possession May 8th.

"Q. At that time how many acres were planted?

"A. Oh, just a rough estimate, around 1200 acres in this lower end here planted.

"Q. What were the total plantings that he made? Do you have something there—

"A. Yes, he had a map for us when I was the manager of the ranch there that I made an estimate off of. I don't know where the map has disappeared to. But I had figured he had about 250 acres of rye, about 1200 acres of barley, 132 acres of wheat, and around 1,085 or 1,086 acres of oats." (R. 106)

Under this testimony of one of appellant's principal witnesses the estimated acreage planted to crop was 2,668 acres or 132 acres less than 2,800. Other witnesses estimated the acreage planted to be as low as 2,500 acres. Thus we see that the estimates varied between 4.7% and 10.7% less than the 2,800 acres referred to in the assignment. However, the language of the assignment warrants the acreage to be *approximately* 2,800. The word "approximately" is defined as meaning "approaching" or "nearly". We do not believe we can quarrel with the trial court's finding that acreage within 4.7% of the 2,800 acres approaches the acreage which appellees warranted was planted to crop. Certainly such finding is not clearly erroneous.

Specifications of error III, IV and V referred to above are grouped together by appellant in his argument because "from an evidential standpoint (they) are so closely interwoven."

It is contended that the evidence established that Barr failed to farm the land and crops in a good and farmerlike manner; that irrigation was necessary but not applied because of carelessness and incompetent help; that weeds took over in certain areas because of failure to spray; that in another area crops were improperly plowed under and that carelessness in harvesting resulted in excessive loss of grain.

The case was tried to the court without a jury. Appellant introduced six witnesses who testified in person; also five persons who testified by deposition. Appellees introduced six witnesses who testified in person and also two who testified by deposition. Numerous exhibits were introduced; also moving pictures of the farm taken during operations were introduced and shown.

There was a sharp conflict in the testimony. Appellee Barr vigorously and continuously protested that he had farm-

---

8. See marginal note 1.

ed the Meiss Ranch in a good farmerlike fashion. It is undisputed that he did not take over the farming of the ranch until the owners had concluded that existing operations were unsatisfactory and that they would have to make a change. There was testimony that prior thereto the ground on a substantial part of the acreage had not been properly prepared for seeding and that such prior preparation was necessary. It is significant that one of the owners of the ranch testified that the fault wasn't with Barr and that under the circumstances of getting started late and the bad weather there was little that anyone could do to produce a better crop.

With respect to the charge of failure in irrigation it might have been found that there was lack of attention. However, there again we find a conflict in the evidence. There was testimony that irrigation was considered and attempted but that it was found to be impractical due to earlier failure to prepare the ground and possible serious damage to crops in the event of an early frost.

We do not believe it necessary to make a detailed review of the evidence in this opinion regarding the other issues raised by appellant. As to appellee's failure to spray and control the weeds, there was testimony appellee had Liston, a professional sprayer, look at the crop; that during May the field wasn't ready for spraying and by the time weather conditions were suitable the weeds had progressed to the point that effective spraying would have probably killed the grain.

With respect to the plowing under of crops, appellee Barr admitted that he plowed up about 120 acres of oats, but there was a sharp conflict as to whether such course was in accord with good farmerlike practice under all existing circumstances.

In connection with the complaint of negligence in harvesting the crop, four witnesses in addition to appellee Barr, testified that the amount of grain left in the field was not excessive or unusual in grain farming operations. Three witnesses in addition to appellee testified that there was no appreciable amount of grain on the highway, with the sole exception that as to one load of grain the tailgate jarred open and spilled about one-fourth of the load.

We will concede after studying the record that a trial court might have reached a conclusion different from that reached by the trial court below, but we are not left with the definite and firm conviction that a mistake has been committed. See United States v. U. S. Gypsum, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

The foregoing references to the testimony make it apparent that there was substantial evidence upon which the trial court properly could make the findings he did. His short but revealing memorandum decision indicates that the trial judge considered the motives and other indicia of credibility as applied to the various witnesses and was impressed with that evidence which sustained appellees' position. Under such circumstances it is not our function to substitute our judgment for that of the trial court.

See rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; U. S. v. Yellow Cab Co., 338 U.S. 338, 341, 70 S.Ct. 177, 94 L.Ed. 150; Paramount Pest Control Service v. Brewer, 9 Cir., 177 F.2d 564; Puget Sound Pulp & Timber Co. v. O'Reilly, 9 Cir., 239 F.2d 607.

Appellant, as already stated, proceeds on the theory that this appeal primarily invokes a determination of factual issues and argues that inasmuch as the trial court recognized the case would be appealed the responsibility is upon this court to pass final judgment. Speculation by a trial court that a hotly contested case will be appealed does not enlarge the scope of the appellate court's review of factual issues.

Upon the record herein we cannot say the findings of the court are clearly erroneous.

Judgment affirmed.