Robert E. **HANSON**, Appellant,

v.

**HUNT OIL COMPANY**, Appellee.

**HUNT INDUSTRIES**, Appellee,

v.

Robert E. **HANSON**, Appellant,

Nos. 20319, 20320.

United States Court of Appeals, Eighth Circuit.

Feb. 26, 1971.

Morris Chertkov, Washington, D. C., for appellant; Rowley & Scott, Washington, D. C., E. F. Engebretson, Pearce, Engebretson, Anderson, Schmidt & Thames, Bismarck, N. D., of counsel.

Thomas A. Mayer, Russell R. Mather, Bismarck, N. D., for appellee; Fleck, Mather, Strutz & Mayer, Bismarck, N. D., of counsel.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff Hanson has taken a timely appeal in case No. 20,319 from final judgment denying his petition seeking reformation or in the alternative the interpretation he urged of a letter agreement entered into between plaintiff and the Hunt Oil Company (Hunt) on August 24, 1961, and from judgment awarding $19,634.38 to Hunt on its counterclaim for Hanson's share of expenses incurred in the operation of the unitized oil field.

Hanson has also appealed from judgment entered in case No. 20,320 against him in favor of Hunt for $40,295.85 for Hanson's share of the cost of operation of a gasoline plant and for foreclosure of a lien upon Hanson's interest in that plant.

The parties stipulated that the evidence introduced in No. 20,319 be considered as evidence in No. 20,320. The cases are consolidated upon appeal. Common issues of law and fact are presented. Diversity jurisdiction in the trial court is established.

This litigation has previously been before us. Hanson v. Hunt Oil Co., 8 Cir., 398 F.2d 578. We there held that Hanson had pleaded reformation and that the court had erred in refusing him leave to amend his complaint to clarify his pleading of reformation and in excluding evidence in support of the reformation issue. We vacated the judgment and remanded for further proceedings consistent with our opinion. We expressed no view on the merits of Hanson's contentions.

Upon remand, the trial court permitted the reformation amendment. Defendant answered. The cases proceeded to trial on the merits. Oral evidence was received on the reformation issue and the intent of the parties.

The parties are in agreement that Hanson was short of funds; that Hunt needed Hanson's participation in the unitization of the oil field; that Hunt to induce such participation agreed to and did advance funds to defray Hanson's share of the cost of placing the unitized field in operation and the erection of the gasoline plant. The controversy arises over the provision for repayment of the advances contained in paragraph "4" of the letter agreement of August 24, 1961, which reads:

"4. All sums so advanced for your account, plus interest thereon at six per cent (6%) per annum, shall be repaid by you to Hunt Oil Company from and out of the following:

"A. From month to month out of production or proceeds therefrom with respect to certain wells, as follows:

All production of the Unitized Substances from the North Tioga-Madison Unit accruing to your account that is in excess of your normal share of total oil production from Investors-State Nos. 1 and 2 Wells and from the Hunt-Johnson State No. 1 Well. For purposes hereof, 'normal share of total oil production' from Investor-State Nos. 1 and 2 Wells means your share of total oil production from said wells under production allowables (up to a maximum of 84 barrels per day per well) which would be assigned to said wells if they had not been included

692

in the Unit. 'Normal share of total oil production' for the Hunt-Johnson State No. 1 Well shall be your share of total oil production from that well up to a maximum of 54 barrels per day total oil production from the well.

"B. All your share of income from said gasoline plant, including income from sales of extracted liquids and other plant products, and sales of gas and residue gas."

Hanson's contention on both the reformation and the interpretation issue is that upon his insistence Hunt agreed to pay him the full production allowables of 84 barrels a day on two wells and 54 barrels on the third well, and that recoupment of Hunt's advances was to be made out of the excess of Hanson's share of the oil production in the unitized field above the aforestated production allowables. He asserts that subparagraph "A", properly interpreted, so provides and that if it does not, the contract should be reformed to express the true intent of the parties. Hunt claims that subparagraph "A" unambiguously reflects the intention of the parties which was that Hanson was guaranteed the proceeds of the actual production of his three wells up to the stated production allowance and that the excess of Hanson's share of the income from the unitized field above the actual production of his three wells was to be applied in repayment of Hunt's advances.

With respect to subparagraph "B" relating to income from the gasoline plant, Hanson claims the word "income" should be interpreted as meaning net income after operating expenses have been deducted, while Hunt contends that the intended meaning was gross receipts or gross income.

The court found that Hanson had not established a right to reformation of the letter contract and that the contract should be interpreted as to both subparagraphs "A" and "B" in accordance with Hunt's contentions. Judgments were entered against Hanson for his share of

the operating costs of the unitized operation in No. 20,319, and for Hanson's share of the cost of operating the gasoline plant in No. 20,320. There is no dispute as to the amount due if the trial court's decision on the reformation and interpretation issues is correct.

We hold that the court's factual determinations are supported by substantial evidence and that the judgments should be affirmed for the reasons hereinafter stated.

The law applicable to reformation is fully discussed in the trial court's memorandum opinion. The correctness of the law as stated and applied is not challenged. Plaintiff offered his own testimony which supports his claim of mutual mistake. He is corroborated in part by Davidson. Such evidence is contradicted and sharply disputed by Mr. Latimer and attorney Livingston, who represented Hunt in the contract negotiations. The trial court in its opinion states:

"This Court will state frankly that, by their appearance on the witness stand, by their demeanor and attitude and manner of answering questions and testifying, this Court has a belief that Mr. Livingston and Mr. Latimer, each of whom testified for the Defendant, testified truthfully."

The court specifically finds that no mutual mistake has been established and that Hunt has made no misrepresentations, and "that plaintiff has not only failed to sustain his burden but that the weight of the credible evidence is to the contrary."

Needless to say, credibility findings and the resolution of the weight of the evidence are for the fact finder, here the trial court. We do not try cases de novo. See United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150; Garrett v. United States, 8 Cir., 407 F.2d 146, 149.

Hanson has failed to demonstrate that the court's findings and decision on the reformation issue are clearly erroneous.

The court interpreted the repayment provisions found in paragraphs "4A" and "4B". In so doing, consideration was given to the oral evidence relating to the intent of the parties and the surrounding circumstances. With respect to "4A" his finding is:

"The Court is satisfied from the overwhelming weight of the credible evidence that at the time involved Plaintiff was insistent that he be permitted to rely on actual production from his wells if he should join the unit, and that it was not understood or intended by the parties that he be guaranteed the value of 84–84–54 barrels of oil per day. The evidence conclusively shows that the actual agreement was discussed in detail prior to its being drafted, and that virtually each provision of the written agreement was carefully discussed by the respective parties and considered by them prior to its execution.

"It seems clear from the evidence that the Plaintiff insisted, and that it was the understanding and intention of the parties as a part of the actual agreement, that Plaintiff's income was to be tied to the actual production from his wells—which were then known to the parties and undisputed by the witnesses at the trial to be three of the best producers in the field."

We agree with such interpretation. We are of the view that the language of paragraph "4A" unambiguously indicated that Hanson was to be allowed to receive and retain the actual production from his three wells up to the maximum then existing allowables and that no guarantee of the maximum allowable production of Hanson's wells can fairly be found in the contract or reasonably implied therefrom.

The interpretation of income in "4B" raises a more difficult problem. In First Trust Co. of St. Paul v. Commonwealth Co., 8 Cir., 98 F.2d 27, 30–31, this court collected many authorities and quotations therefrom on the meaning of the words "income" and "gross income." Substantial authority is set out to the effect that income means what is received from any business or investment of capital without reference to outgoing expenditures. It is also pointed out that other cases recognize that the word "income" has a flexible meaning as have the words "gross income." Our court had before it the interpretation of the words "gross income." We held:

"We conclude that the term 'gross income' cannot be said to convey the same definite and inflexible significance under all circumstances and wherever used. Its meaning depends on the connection in which it is used and the result intended to be accomplished. Here we must ascribe that meaning which conforms the contract to the intent of the parties." 98 F.2d 27, 31.

We believe the court in our present case properly interpreted income to mean receipts received from the gasoline plant upon the basis of the contract provision itself and the oral evidence on intent. Paragraph "3" of the letter agreement contains the agreement of Hunt to advance Hanson's share of the capital needed to start the unitization project and the gasoline plant but expressly states Hunt "does not agree to pay for your account any unit operating expenses or any plant operating expenses." Paragraph "4" immediately after subparagraph "B" previously quoted continues:

"The share of such production or proceeds therefrom to be paid or delivered to Hunt in repayment of sums so advanced shall be paid directly to Hunt by the purchaser of such production, or shall be delivered to Hunt at the wells or plant."

Such language supports the view that the parties intended to treat income as the entire proceeds from the plant production.

Hanson received monthly statements of his account but took no action thereon until 1964. The court treated Hanson's

long delay in making his present contentions known as a practical acquiescence in Hunt's interpretation of the agreement as reflected in the accounting statements submitted.

There is no substantial oral evidence which would support a basis for rejecting the trial court's determination of the interpretation issue.

The judgment of the trial court in each of these cases is affirmed.