888 F.2d 127
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lu BURNS, Sue Cook, Annette Falls McLaughlin, Petitioner,
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY, Respondent.
 No. 88-5774.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1989.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges, DAVID D. DOWD, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs appeal from the district court's judgment against them on their Title VII, 42 U.S.C. 2000e et seq., claim of "disparate treatment" sex discrimination against defendant South Central Bell (SCB). After three days of trial, the district court found, in the first instance, that plaintiffs' evidence had failed to establish even a prima facie case of "disparate treatment" sex discrimination under Title VII. However, the district court went on to examine plaintiffs' case pursuant to the analysis of Title VII cases defined in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), assuming for the purposes of discussion only, that plaintiffs had established a prima facie case. Under that analysis, the district court concluded that plaintiffs' case failed to establish that the legitimate, non-discriminatory reason articulated by defendant for its action was pretextual.
 
 
 2
 On appeal, plaintiffs assert that the evidence in the record establishes that they have successfully met their burden of proof under Texas Dept. of Community Affairs, supra, and seek reversal of the district court's judgment. This Court's review of the district court's findings of fact is limited to a determination of whether those findings are "clearly erroneous." Rule 52(a) of the Federal Rules of Civil Procedure. Upon review of the record, we conclude that the district court's findings of fact are not "clearly erroneous." Accordingly, we affirm the district court's entry of judgment against plaintiffs.
 
 I.
 
 3
 Plaintiffs' sex discrimination claim arises from the change of title on September 2, 1979, of a certain group of SCB employees from switching equipment technician (SET) to toll testing technician (TTT). All of the SETs whose titles were changed to TTTs were men. Plaintiffs allege that they were discriminated against on the basis of sex because they were not among the SETs whose titles were so changed. Plaintiffs claim they were damaged when their titles were not changed to TTT because the opportunity for virtually unlimited overtime, due to the nature of changes in the method of "switching" which followed the title change at issue, was unavailable to them.
 
 
 4
 Defendant counters that the title change was implemented to better describe the work this group of employees engaged in, and that the change was imposed on an existing group of employees, the composition and job function of which was unaltered by the title change.
 
 
 5
 The trial began on June 27, 1988, and concluded on June 29, 1988. The trial court set forth in his written opinion findings of fact that are summarized below.
 
 
 6
 The plaintiffs in this case, Lu Burns (Burns), Sue Cook (Cook), and Annette Falls-McLaughlin (Falls-McLaughlin)[1] were members of the Communications Workers of America (CWA), which was party to a collective bargaining agreement with SCB. In 1978, as a result of certain technological changes in SCB's operation, a dispute arose between SCB and the CWA regarding the proper allocation of overtime, vacations, job tours, and furlough days amongst SETs assigned to work in the switching control center environment.[2] This dispute resulted in the filing of a grievance, which was ultimately settled by agreement in May, 1979. This settlement agreement divided the bargaining unit employees into three groups. The agreement provided that except in an emergency situation, overtime allocations, vacations, job tours, and furlough days, must be filled and arranged from within each group described in the settlement agreement. Group 2 employees, the group at issue in this lawsuit, was composed entirely of employees whose job function code (JFC) was 4330. This JFC reflected that the major work performed by those employees was in connection with transmission and carrier equipment. Plaintiffs' JFC was 4311. That JFC reflected that the major work performed by plaintiffs was in connection with step-by-step switching equipment. Job function codes were routinely used by SCB to categorize employees by the nature of their work, and there was unrebutted testimony at trial that the use of job function codes was required by the Federal Communications Commission (FCC).
 
 
 7
 On September 2, 1979, SCB changed the job title of SETs whose JFC was 4330 from SET to TTT. SCB employees whose JFC was 4330 were in group 2, as described in the May, 1979, settlement agreement. Group 2 consisted of thirty eight male employees. This change was simply a matter of changing title--there were no vacancies filled nor any selection process utilized. The new group was merely the old group under a different name. The title change was implemented to describe more accurately the job function of the employees within that existing group. Such title changes by SCB were "standard practice" to bring the employees' titles in line with the work they performed. There was no change in duties or pay after the title change. Further, there was no evidence to the effect that the employees in group 2 were somehow previously selected for those positions so that they would be advantaged when the title change was implemented. Rather, the district court specifically found the employees in group 2 were so placed by virtue of the grievance settlement agreement between SCB and the CWA in May, 1979.
 
 
 8
 On September 2, 1979, plaintiffs' JFCs were all 4311, and they were in group 1 pursuant to the May, 1979, grievance settlement agreement. Because plaintiffs' JFC was not 4330, their titles were not changed to TTTs.
 
 
 9
 All three plaintiffs timely filed EEOC charges alleging that SCB discriminated against them on the basis of sex by "selecting" less senior and less qualified men for positions as TTTs. All three women received right to sue letters and timely filed their actions in district court.
 
 
 10
 After three days of trial, the district court issued a memorandum opinion outlining the court's findings of fact, summarized above, and conclusions of law. Applying its factfinding to the elements of proof in a Title VII case, as outlined in Texas Department of Community Affairs, supra, the district court concluded that plaintiff had failed to prove their case at two levels. In the first instance, assuming arguendo the plaintiffs were qualified to be TTTs, the district court found that plaintiffs failed to establish a prima facie case of disparate treatment sex discrimination because there was no rejection of plaintiffs and continued search by SCB for persons with the same qualifications as plaintiffs to "fill" positions of TTT. The district court found the evidence was uncontroverted that there were no vacancies or applicants for employment as TTTs. TTTs came about through no other process than a title change of an existing group whose duties and rate of pay were the same before the title change as after.
 
 
 11
 At the second level, the district court went on with the Texas Department of Community Affairs analysis, assuming for that purpose that plaintiffs had established a prima facie case. At that level, the district court concluded that there was a "total absence" of evidence that SCB's articulated legitimate, non-discriminatory reason for its action was pretextual. Accordingly, plaintiffs failed to meet their burden of proof, and judgment was entered for defendant.
 
 II.
 
 12
 This Court's review of the findings of fact of the district court are governed by Rule 52 of the Federal Rules of Civil Procedure. Rule 52(a) provides in relevant part
 
 
 13
 Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.
 
 
 14
 A district court's findings are "clearly erroneous" when, although there is evidence to support those findings, the reviewing court is left with a "definite and firm conviction" that, based upon the entire evidence, a mistake has been made. Batts v. NLT Corp., 844 F.2d 331, 336-37 (6th Cir.1988) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948))). Such a "definite and firm conviction" should not arise merely because the reviewing court might have decided the case differently, rather,
 
 
 15
 [i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949); see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844 (1982).
 
 
 16
 This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts....
 
 
 17
 Anderson v. Bessemer City, 470 U.S. at 573-74.
 
 
 18
 In a disparate treatment case based on sex, the employer treats a particular employee less favorably than others because of the employee's gender. In this situation, plaintiff is required to prove that defendant acted with a discriminatory intent or motive. In order to establish a prima facie case under the disparate treatment theory, plaintiff must prove that she was rejected in some way by the employer while the employer continued to seek an employee with similar qualifications to the plaintiff to occupy the position for which plaintiff was rejected. The employer may then rebut the plaintiff's prima facie case by producing some evidence that there was a legitimate, nondiscriminatory reason for its decision. If the employer comes forward with a legitimate, nondiscriminatory reason for its decision, plaintiff may still prevail by establishing by a preponderance of the evidence that the legitimate, nondiscriminatory reason offered by defendant is pretextual. The burden of persuasion remains at all times with the plaintiff. Watson v. Fort Worth Bank and Trust, 108 S.Ct. 2777, 2784 (1988) (citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981)).
 
 III.
 
 19
 Upon applying the foregoing principles, this Court concludes that the findings of fact arrived at by the district court are "plausible in light of the record viewed in its entirety." With respect to whether or not plaintiff even successfully established a prima facie case of disparate treatment sex discrimination, there is conflicting evidence in the record as to plaintiffs' qualifications to perform as TTT's on September 2, 1979. While the district court resolved this issue in the negative, the district judge went on to further observe that there was simply no selection process employed on September 2, 1979, by which plaintiffs were excluded from the TTT title because of their sex. Based upon the evidence in the record before this Court, it cannot be said that the district court's determination that plaintiffs' qualifications to perform as TTTs were suspect was clearly erroneous. Similarly, it cannot be said that the district court's determination that no selection process was utilized and that the title change was simply a routine effort by SCB to harmonize the work performed by employees with their title, was clearly erroneous.
 
 
 20
 We arrive at a like conclusion with respect to our second level of analysis. Assuming for the sake of argument that plaintiffs had successfully established a prima facie case of disparate treatment sex discrimination pursuant to Texas Department of Community Affairs, supra, the district court concluded that there was a "total absence" of evidence that SCB's articulated legitimate, non-discriminatory reason for its action was pretextual. Plaintiffs argue that groupings of the May, 1979, grievance settlement agreement and the job function codes were all pre-arranged as a pretext for later excluding women from the title change to TTT. In support of their argument that the grievance settlement agreement and job function codes were a pretext for the later sex discrimination, plaintiffs contend that a Wilbert Wilson, who allegedly had made sexually derogatory remarks about women, was the person responsible for originating the idea of the title change, selecting the men whose title would be changed, and then implementing the grouping arrangement of the settlement agreement to carry out his plan.
 
 
 21
 Upon reviewing the record before us, we conclude that the district court's determination that plaintiffs failed to meet their burden of persuasion on the issue of pretext was not clearly erroneous. Before the district court was evidence that James McCabe, operations manager of the personnel department at SCB, was the person who made the decision to change the title of JFC 4330 personnel from SET to TTT. With this evidence before him, the district court made the finding that "[t]here [was] a total absence of evidence that would even marginally show pretext." It is especially within the province of the fact finder, who is able to observe the demeanor of witnesses, to make determinations of credibility which form the basis of the district court's factual determinations. When, as in this case, there may be two permissible views of the evidence, it can hardly be said that the district court's choice is clearly erroneous.
 
 
 22
 Finding that the district court was not clearly erroneous in its determination that plaintiffs failed to carry their burden in establishing a prima facie case and further finding, assuming arguendo a prima facie case, that the district court was not clearly erroneous in its determination that plaintiffs failed to carry their burden of persuasion demonstrating pretext, the district court's judgment rendered against plaintiffs on their disparate treatment Title VII action is AFFIRMED.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court, Northern District of Ohio, sitting by designation
 
 
 [1]
 In the transcript to the proceedings, below, plaintiff McLaughlin is referred to as Ramona Annette McLaughlin
 
 
 [2]
 Although the district court did not expressly make the finding, it is undisputed in the record that before September 2, 1979, SCB employees who performed the task of transferring or switching telephone calls held the title of SET. Transferring involves routing telephone calls from one exchange to another. The equipment used to accomplish the task of transferring is called transmission and carrier equipment. Switching involves routing calls within an exchange. There are three types of equipment which may be used to accomplish the task of switching: (1) step-by-step; (2) cross-bar; and (3) electronic switching