**Bernard J. NOBLE, Plaintiff–Appellant,**

v.

**The ALABAMA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT; Director of the Alabama Department of Environmental Management; et al., Defendants–Appellees.**

**No. 88–7234.**

United States Court of Appeals, Eleventh Circuit.

May 2, 1989.

Claudia H. Pearson, Robert L. Wiggins, Gordon, Silberman, Wiggins and Childs, Birmingham, Ala., for plaintiff-appellant.

Richard E. Smith, Thomas A. Carraway, Steven A. Benefield, Rives & Peterson, Birmingham, Ala., for defendants-appellees.

Before JOHNSON, HATCHETT and COX, Circuit Judges.

JOHNSON, Circuit Judge:

Bernard J. Noble appeals the district court's judgment for the appellees, the Alabama Department of Environmental Management ("ADEM") and Leigh Pegues, Director of ADEM. Noble brought suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e *et seq.*, claiming that his discharge from ADEM was racially discriminatory in violation of that statute. We affirm the district court.

## I. FACTS

In January 1984, Noble, who is black, applied with the State of Alabama for employment as a Public Health Engineer I (PHE–I). Noble holds a B.S. degree in Civil Engineering Technology ("CET") from Alabama A & M University. He has completed additional course work in Water Treatment System Design at the University of Tennessee. As required by state law, the Personnel Department of the State of Alabama ("SPD") reviewed his qualifications in light of its objective standards and determined that Noble was qualified for the position of PHE–I. SPD therefore certified Noble to ADEM for hire.[1]

ADEM objected to Noble's certification and requested that it be allowed to bypass him on the list of certified candidates. ADEM claimed that applicants with CET degrees were not qualified for PHE–I work at ADEM. They maintained that a college degree in engineering should be required of all persons applying for PHE–I positions. SPD responded that Noble was a qualified applicant who could not be bypassed.[2]

On July 16, 1984, Noble was interviewed by Charles R. Horn, Acting Director of the Water Division of ADEM. Horn determined that Noble's past experience had been in construction engineering and that he had no experience in interpreting environmental data or in engineering design. Noble assured Horn that he was certain he could learn all he needed to know on the job. At a second interview on July 25, 1984, Horn and James Warr, Deputy Director of ADEM, asked Noble a series of questions about engineering practices that Noble could not answer. After again expressing concern as to his lack of training and experience, Horn and Warr explained the job requirements to Noble in detail. Again, Noble stated that all he wanted was "a chance."

Noble was offered a job with the Industrial Waste Control Section of ADEM's Water Division shortly after the two interviews. Prior to Noble's employment with ADEM, the agency had not employed a PHE–I who did not possess a B.S. degree in engineering. Noble began working on August 6, 1984. As for all new PHE–I

---

1. SPD regulates state employment pursuant to Ala.Code § 36–26–15 and § 36–26–17 (1975) and the court order in *United States v. Frazer,* 317 F.Supp. 1079 (M.D.Ala.1970) (permanent injunction against racial discrimination in employment opportunities). It is the state agency that establishes qualifications for state positions.

2. The dispute between ADEM and SPD over Noble took place in the context of a larger dispute between the two agencies. Although ADEM informed SPD as early as 1978 that it did not consider CET graduates qualified for the PHE–I classification, SPD continued to certify CET graduates for hire until April 26, 1985. At that time, SPD agreed to change its policy regarding CET graduates and acknowledged that it based its decision largely on evidence presented by ADEM regarding the lack of academic training CET graduates received relevant to the work routinely required of PHE's.

employees, his appointment was subject to his successful completion of a six-month probationary period.

Horn first evaluated Noble on November 6, 1984. He noted that Noble's attitude was good but that "the basic ability to perform technical components of the job is not there" and that Noble was forced to spend excessive amounts of time on the job learning water pollution control theory and facility design which were foreign to him. He concluded that Noble's performance was substandard. Horn's final evaluation of Noble was dated January 7, 1985. He again concluded that Noble's performance was substandard and recommended termination. Horn stated that Noble had not produced the expected number of permits, had not conducted enough facility inspections, and had avoided design projects. ADEM Director Joe Broadwater concurred in Horn's evaluation and ADEM terminated Noble on Feb. 6, 1985. The PHE–I position remained vacant until May 6, 1985, when a white male PHE–II from the Municipal Branch transferred to the Industrial Waste Control Section to fill the position.

After his discharge, Noble filed a charge with the EEOC. The EEOC found no "reasonable cause" to support Noble's claim of discriminatory treatment and issued a right-to-sue letter. Noble then filed suit under Title VII and 42 U.S.C.A. § 1983. The district court dismissed the Section 1983 claim and heard the Title VII claim without a jury. During Noble's presentation of his prima facie case, he called Horn as an adverse witness. Having extensively cross-examined Horn and the other witnesses during Noble's presentation of his case, the appellees made a motion to dismiss, claiming that Noble had not met the burden of presenting a prima facie case. When the court denied this motion, appellees rested.

The district court entered judgment for the appellees, finding that Noble had not established a prima facie case. Specifically, the district court found that Noble was not actually qualified for the job at ADEM, and that he was destined to produce substandard work by virtue of his insufficient college training and experience. Even if Noble could be said to have established a prima facie case, the district court found that ADEM had provided a legitimate, nondiscriminatory reason for Noble's discharge—namely, that he was unable to meet the minimum standards to be retained after the end of his probationary period. Further, the district court found that Noble had failed to prove that this reason was not legitimate. On appeal, Noble challenges the district court's finding that ADEM did not discriminate against him because of his race in violation of Title VII. He also challenges one of the district court's evidentiary rulings. We will examine each of his claims in turn.

## II. TITLE VII CLAIM

■ Because Noble alleged disparate treatment in his Title VII action, he had the ultimate burden of proving that ADEM committed intentional discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). However, although the ultimate burden remained with Noble at all times, he could, by proving a prima facie case of disparate treatment, have shifted to ADEM the burden of producing evidence of a legitimate, nondiscriminatory reason for the employment action taken. *Id.* at 252–56, 101 S.Ct. at 1093–95.[3] If ADEM then successfully rebutted Noble's prima facie case, the burden would have shifted back to Noble, who would have had to establish by a preponderance of the evidence that ADEM's proffered rea-

---

3. The elements of a prima facie case sufficient to invoke the presumption of discrimination were set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The application of the *McDonnell* factors varies with circumstances of each case. This Court has stated that, in the context of wrongful discharge, the factors are as follows: The plaintiff must establish that (i) he is a member of a minority; (ii) that he was qualified for the job; (iii) that he was discharged; and (iv) that he was replaced by a member of the majority race. *Lincoln v. Board of Regents of the Univ. System of Georgia*, 697 F.2d 928, 937 (11th Cir.1983).

sons were pretextual. *Id.* at 256, 101 S.Ct. at 1095. He could have proved this either "by means of affirmative evidence that race played an impermissible role in the [employer's] decision or by showing that the proffered nondiscriminatory reasons do not merit credence." *Lincoln,* 697 F.2d at 938 (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). This final burden was simply the ultimate burden of persuading the court that the plaintiff had been a victim of intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ Noble challenges the district court's conclusion that he has not shown intentional discrimination. A finding on the issue of intentional discrimination may be reversed only if it is clearly erroneous. *Pullman–Standard v. Swint,* 456 U.S. 273, 285–90, 102 S.Ct. 1781, 1788–91, 72 L.Ed.2d 66 (1982). Thus, the district court's finding in this regard may be reversed only if this Court finds that the record lacks substantial evidence to support the finding or if this Court is left with a definite and firm conviction that an error has been made. *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Further, in evaluating Noble's assertions that the district court erred, we must keep in mind that "a district court cannot be held in error merely because the evidence was susceptible to different interpretations, and the choice it made was different than the one the [appellant] hoped for." *Baylor v. Jefferson County Bd. of Educ.,* 733 F.2d 1527, 1532 (11th Cir.1984) (citing *United States v. Yellow Cab,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949)).[4]

■ In its judgment for the appellees, the district court concluded that Noble had not demonstrated he was qualified to be retained beyond the probationary period and that ADEM's explanation of his dismissal was not pretextual. The district court specifically credited Horn's testimony that he hired Noble with "grave reservations" about his preparation for the job, that Noble received poor evaluations during his 6–month probationary period, and that he was discharged at the end of that period because he was not capable of performing in the position at an acceptable level. The district court specifically discredited Noble's testimony that he did not receive the same training and supervision during his probationary period as other probationary employees. After reviewing and hearing testimony on the two written evaluations of Noble dating from November 6, 1984 and January 7, 1985, the court rejected Noble's allegation that he was not being evaluated fairly in comparison to other probationary employees. Further, the court noted that his assertion that he was assigned to a geographic territory more difficult than that usually assigned to probationary PHE–I's was not proven. Although the evidence in this case is susceptible to different interpretations, we have reviewed the record thoroughly and cannot say that the district court's finding of no intentional discrimination was clearly erroneous.

## III. ADMISSION OF DEFENDANT'S EXHIBIT 14 INTO EVIDENCE

During their cross-examination of Horn, appellees introduced Defendant's Exhibit 14. The exhibit consisted of a letter, dated April 23, 1985, from Joe Broadwater, then Director of ADEM, to Dr. Halycon Ballard, Director of SPD, addressing ADEM's concern that CET graduates were not qualified to hold PHE positions. Attached to Broadwater's letter were copies of correspondence from various academic institutions and government agencies to ADEM, supporting ADEM's evaluation of the capabili-

---

**4.** This Court need not conclusively determine whether Noble in fact met the burden of presenting a prima facie case in light of *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In *Aikens,* the Supreme Court stressed that presentation of a prima facie case was not a rigid requirement but simply a practical tool to facilitate evaluation of the evidence:

"Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.'" *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1481 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.)

ties of CET graduates.[5] The district court admitted the exhibit under Fed.R.Evid. 803(24) and Fed.R.Evid. 803(6). Noble objected, claiming that the exhibit consisted of inadmissible hearsay, and he urges this Court to find that the district court erred in admitting the exhibit. We review the district court's decision under the abuse of discretion standard. *Baylor*, 733 F.2d at 1533.

Fed.R.Evid. 803(24) sets out five conditions for the admission of hearsay evidence that does not fit under any of the enumerated exceptions contained in Rule 803. The Rule requires notice, "circumstantial guarantees of trustworthiness," materiality, probativeness, and that the evidence must serve "the interests of justice." *United States v. Parker*, 749 F.2d 628, 633 (11th Cir.1984). Noble challenges the district court's finding that he was properly notified of ADEM's intention to submit the letter under this evidentiary rule, that the letter and its attachments were reliable testimony, and that they were "more probative on the point for which [they were] offered than any other evidence which the proponent can procure through reasonable efforts," as required by the rule.[6]

■ Regarding the probative value of the evidence, we agree with Noble that it was not unreasonable to expect appellees to call the writers of the letters themselves to testify about the context of their statements as well as their qualifications to evaluate the competence of CET graduates instead of admitting the hearsay evidence. Noble is correct in arguing that one of the purposes of Rule 803(24) is to allow admission of hearsay, which is presumed to be unreliable, under special conditions of hard-

ship when the evidence would be unreasonably difficult to get from a declarant. When the evidence is not unreasonably difficult to obtain directly from a declarant, Rule 803(24) does not apply. *See United States v. Scrima*, 819 F.2d 996, 1001 (11th Cir.1987) (Rule 803(24) not applicable when movant made no showing that reasonable efforts could not have produced witness with personal knowledge); *United States v. Taylor*, 792 F.2d 1019, 1027 (11th Cir. 1986) (Rule 803(24) exception generally not available when declarant is available to testify); *Parker*, 749 F.2d at 633 (hearsay evidence probative when witnesses with direct information resided in Scotland). Given that the movant made *no* showing that reasonable efforts could not have produced the writers of these letters, we hold that the district court judge abused his discretion in admitting Defendant's Exhibit 14 under Rule 803(24).

■ We also hold that the district court erred in admitting the evidence under Fed. R.Evid. 803(6). This rule allows the introduction of business records "kept in the course of a regularly conducted business activity" if the method of the document's preparation does not indicate a "lack of trustworthiness." Noble argues that appellees did not lay an adequate foundation for admission of the letter and its attachments as a business record. We agree. Horn simply testified that he had seen the letter before and that it was prepared in the "ordinary course" of ADEM's business. This testimony was not adequate to establish that the letter was compiled as a matter of regular practice, as opposed to one prepared in anticipation of litigation. Fur-

5. The five letters attached to Broadwater's letter to Ballard were written pursuant to previous telephone conversations between ADEM personnel and the heads of the departments of Civil Engineering at Auburn University and the University of Alabama, the Dean of the School of Technology at Alabama A & M University, the Assistant Chief Engineer at the State of Alabama Highway Department, and the Alabama State Board of Registration for Professional Engineers and Land Surveyors. The letters confirm ADEM's position that CET programs are essentially technical in nature and that CET graduates are expected to provide technical support

for civil engineers, particularly in the construction industry. Further, they support ADEM's contention that CET graduates are not, generally speaking, qualified for environmental engineering careers because their degree requirements do not include higher level mathematics, environmental design or environmental engineering courses.

6. Because we hold that the exhibit does not meet the probativeness requirement of Rule 803(24), we need not address the notice and trustworthiness requirements.

ther, even if Horn had knowledge of Broadwater's preparation of the letter to Ballard, he did not testify that he had personal knowledge of the circumstances under which the attached letters were prepared or that they were in fact reliable copies of originals received by Broadwater. *See United States v. Williams*, 837 F.2d 1009, 1013 n. 6 (11th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988) (proper foundation for admission of 803(6) testimony should include testimony of witness with personal knowledge of how document was compiled); *Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1259–60 (11th Cir.1983) (person who actually prepared business record need not testify but other circumstantial evidence and testimony must suggest trustworthiness of documents); *United States v. Dreer*, 740 F.2d 18, 20 (11th Cir.1984) (proper foundation for admission of business record must sufficiently indicate reliability, including "circumstances surrounding the origin and the nature of the compilation").

■ However, although the district court erred in admitting the letter and its attachments, we hold that the error was harmless. Exhibit 14 is directly relevant only to the issue of Noble's qualifications for the job. The district court did cite the exhibit as evidence that Noble was never qualified for the PHE–I position and that he therefore failed to meet the requirements for a prima facie case of disparate treatment. However, the court found that even if he had established a prima facie case, ADEM's reasons for his dismissal were legitimate and nondiscriminatory based on his poor performance during his probationary period. The exhibit in question addresses Noble's qualifications when he started the job and does not determine his performance on the job. Further, even if the trial judge had not considered Exhibit 14, he could reasonably have found that ADEM officials judged Noble's professional preparation inadequate from their testimony and evaluations of his work. In light of the abundant evidence that Noble did not meet the minimum performance standards required to secure employment beyond the probationary period, any district

court error in admitting Exhibit 14 did not substantially affect the district court's ultimate finding that Noble was not the victim of discrimination. *See* Fed.R.Civ.P. 61 (error is harmless if it "does not affect the substantial rights of the parties"); *Fishing Fleet, Inc. v. Trident Insurance Co., Ltd.*, 598 F.2d 925, 929 (5th Cir.1979) (admission of hearsay evidence is harmless if record shows sufficient nonhearsay evidence to support the district court's finding); *see also Jones v. Western Geophysical Co.*, 761 F.2d 1158, 1162 (5th Cir.1985) (in Title VII case, erroneous admission of evidence is harmless if trial court does not place "substantial reliance" on evidence in its finding on ultimate issue of discrimination).

## IV. CONCLUSION

For the foregoing reasons, the district court judgment is AFFIRMED.