[Cite as *State v. Bryant*, 2011-Ohio-3353.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

BROOKLYN BRYANT
     And
BRYAN DRONEBARGER

     Defendants-Appellants

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Julie A. Edwards, J.

Case No. 10CA019
     And
10CA020

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Holmes County Municipal Court, Case Nos. 09CRB524 and 09CRB526 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | July 1, 2011 |
| APPEARANCES: | |

For Plaintiff-Appellee

CHRISTINE C. WILLIAMS
Assistant Prosecuting Attorney
Holmes County, Ohio
164 East Jackson Street
Millersburg, Ohio 44654

For Defendants-Appellants

JEFFREY G. KELLOGG
5 South Washington Street
Millersburg, Ohio 44654

*Hoffman, J.*

{¶1}    In Holmes Appellate Case No. 10CA0019, defendant-appellant Brooklyn Bryant appeals her conviction on one count of possession of drug paraphernalia entered by the Holmes County Municipal Court, after the trial court found her guilty following her entering a plea of no contest.  In Holmes Appellate Case No. 10CA0020, defendant-appellant Bryan Dronebarger appeals his conviction on one count of possession of drug paraphernalia entered by the Holmes County Municipal Court, after the trial court found him guilty following his entering a plea of no contest.  Plaintiff-appellee in both appeals is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}    On December 3, 2009, Appellants were each charged with one count of possession of drug paraphernalia, following the execution of a search warrant on their residence.  Appellants filed motions to suppress.  Both motions alleged the affidavit which was presented in support of the issuance of the search warrant contained intentionally or recklessly false statements sufficient to undermine the trial court's finding of probable cause to support the issuance of said warrant.  The trial court conducted a hearing on both motions on May 18, 2010.

{¶3}    Deputy Tim Stryker, a K-9 Officer with the Holmes County Sheriff's Department, testified he conducted a routine traffic stop on October 2, 2009, involving Appellant Bryant, Katherine Findlay, and Eric Troyer.  During the stop, Deputy Stryker discovered drug paraphernalia, however, no charges resulted from the incident.  Several days later, on October 5, 2009, Deputy Stryker received a 911 hang-up call during which he heard screaming prior to the disconnect.  The officer attempted to call

back the number, but received no response.  Deputy Stryker then proceeded to the residence associated with the telephone number.  The residence was that of Appellants.

{¶4}    Barbara Bryant, the mother of Appellants, answered the door.  Mrs. Bryant advised the deputy nothing was going on.  When asked about the screaming on the phone, Mrs. Bryant told Detective Stryker she was having an argument with her son. Deputy Stryker informed Mrs. Bryant he wished to speak with Appellant Dronebarger and asked his location.  Mrs. Bryant stated Appellant Dronebarger was in the basement and she would call him upstairs.  Deputy Stryker advised Bryant, because he was the only officer at the scene and because it was a domestic situation, he wanted to keep the parties involved separated until another officer arrived.  Despite the explanation, Mrs. Bryant would not permit the officer to go downstairs, but rather she proceeded to the basement and returned with Appellant Dronebarger.  When Deputy Stryker left the residence, he noticed one of the basement windows was covered with a curtain. Subsequently, the officer submitted the information relative to the October 2, 2009, and October 5, 2009 incidents to Midway Drug Enforcement Agency.

{¶5}    Koula Zambounis, an intelligent specialist for Midway Drug Enforcement Agency, testified in November, 2009, she was investigating alleged drug activity at 7124 Township Road 323, which she knew to be the residence of Appellants.  Using information gathered by Deputy Stryker, and relayed to her by Agent Joe Mullet, Zambounis secured a search warrant on November 3, 2009.

{¶6}    In paragraph 3 of the affidavit in support of the search warrant, Zambounis named Appellant Dronebarger as the third person in the vehicle stopped by Deputy Stryker on October 2, 2009.  Zambounis acknowledged Agent Mullet had provided her

with Eric Troyer's name as the male passenger in the October 2, 2009 traffic stop. However, she forgot to consult her hand written notes when composing the affidavit. Zambounis also acknowledged she averred all three persons in the vehicle stopped by Deputy Stryker on October 2, 2009, were residents of 7124 Township Road 323, when such was not the case. Likewise, in her affidavit, Zambounis stated Deputy Stryker had found a set of scales covered with marijuana residue in Appellant Bryant's coat pocket during the October 2, 2009 traffic stop.

{¶7} In paragraph 5 of her affidavit, Zambounis had averred the electrical consumption levels at Appellants' residence were double and/or triple the kilowatt hour usage of two "comparables", i.e., neighboring properties, based upon information provided by Holmes-Wayne Electric Co-op. On cross-examination, Zambounis indicated she received the information via Agent Mullet and did not undertake further investigation to determine whether or not the "comparables" were residential homes with similar square footage and occupancy. Zambounis was unaware at least one of the residences to which she compared the kilowatt hour usage with Appellants' residence was occupied by an Amish family. Zambounis also did not know one of the comparables was a freezer barn.

{¶8} Casey Wagner, an accounting manager with Holmes-Wayne Electric, testified on October 30, 2009, his office received a subpoena requesting consumption records for the residence at 7124 Township Road 323 as well a request for the average usage of residents in the area with similar square footage. Wagner explained the Holmes-Wayne Electric does not maintain records relative to the square footage of a property. Generally, the subpoenas received by Holmes-Wayne request consumption

history for specific addresses.  In response to the subpoena, Holmes-Wayne provided records of the consumption history of the requested address and other addresses in close proximity.

{¶9}    Wagner testified the structure situated at one of the addresses was a freezer barn, which is a small storage barn in which Amish people keep their freezers. Wagner indicated the average consumption for residential and farm usage of Holmes-Wayne customers is 1450 kilowatt hours/month.  Although Wagner was not in the office when Agent Mullet brought the subpoena, a coworker contacted him about the request. Wagner told his coworker to provide Agent Mullet with the consumption histories of properties in close proximity and to advise the agent square footage information was unavailable.  Wagner explained there are a number of variables which influence the electric usage of different properties.

{¶10} Following the hearing, the trial court denied Appellants' motion to suppress.  With respect to the issues raised in the instant appeal, the trial court specifically found:

{¶11} "1) On or about October 2, 2009 Officer Stryker performed a traffic stop on a motor vehicle whose operator had an expired license.

{¶12} "2) Officer Stryker observed a set of scales in the coat pocket of a Brooklyn Bryant.  She stated he lived at 7124 Township Road 323, Millersburg.

{¶13} "3) On October 5, 2009 Officer Stryker responded to a "Domestic Violence" call at that residence.

**{¶14}** "4) Officer Stryker observed Brooklyn Bryant acting nervously and she would not permit the officer in the house to complete his domestic violence investigation.

**{¶15}** "5) Officer Stryker observed the basement windows covered.

**{¶16}** "6) Records from Holmes Wayne Electric Co-op indicated very high usage of electricity as compared to the neighbors."  July 14, 2010 Judgment Entry.

**{¶17}** Based upon the findings, the trial court found any discrepancies in the affidavit were minor and unintentional; therefore, the search warrant had been properly issued.  Thereafter, on August 24, 2010, Appellants appeared before the trial court and entered pleas of no contest to the charges.  The trial court found both Appellants guilty and sentenced each one to thirty days in the Holmes County Jail.  The trial court also imposed a $200.00 fine plus court costs on each Appellant and suspended their drivers' licenses for 180 days.  The trial court memorialized its decision via Journal Entry filed August 24, 2010.

**{¶18}** It is from this judgment entry Appellants appeal, raising the following assignment of error:

**{¶19}** "I. THE TRIAL COURT ERRED IN DENYING BROOKLYN BRANT AND BRYAN DRONEBARGER'S MOTION TO SUPPRESS EVIDENCE."

I

**{¶20}** In their sole assignment of error, Appellants contend the trial court erred in denying their motions to suppress.

**{¶21}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact.

Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶22} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See, *Dunlap,* supra; *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; *State v. Medcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See, *State v. Fields* (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, *United States v. Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744, 151

L.Ed.2d 740; *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.

**{¶23}** Accordingly, we review determinations of historical facts only for clear error. *Ornelas,* supra; *State v. Gillard* (1997), 78 Ohio St.3d 548, 552, 679 N.E.2d 276, 281. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas,* supra at 698, 116 S.Ct. at 1663.

**{¶24}** The first issue we must address is whether the factual findings, as determined by the lower court at the evidentiary hearing on the motion to suppress evidence, were clearly erroneous. *State v. Prigmore,* 5th Dist. No.2005-CA-00115, 2005-Ohio-6952 at ¶ 15. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.* (1947), 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746. Moreover, where the evidence would support several conclusions but the lower court has decided to weigh more heavily in one direction, "[s]uch a choice between ... permissible views of the weight of evidence is not 'clearly erroneous'." *United States v. Yellow Cab Co.* (1949), 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150.

**{¶25}** In the instant action, the trial court conducted a hearing pursuant to *Franks v. Delaware* (1978) 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667, in conjunction with the motion to suppress.[1]

---

[1] A *Franks* hearing is an evidentiary hearing " '[w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,

**{¶26}** Following the hearing, the trial court found:

**{¶27}** "4) Officer Stryker observed [Appellant Bryant] acting nervously and she would not permit the officer in the house to complete his domestic violence investigation.

**{¶28}** "5) Officer Stryker observed the basement windows covered.

**{¶29}** "6) Records from Holmes Wayne Electric Co-op indicated a very high usage of electricity as compared with the neighbors."

**{¶30}** July 14, 2010 Judgment Entry.

**{¶31}** These findings are identical to the statements averred to by Agent Zambonis in her affidavit in support of the search warrant. We find these factual findings are not supported by the evidence presented at the suppression hearing. Officer Stryker did not testify Appellant Bryant would not permit him to enter the house. Rather, he stated he was allowed into the home, but Appellants' mother, Barbara Bryant, would not permit him to go into the basement to speak with Appellant Dronebarger. When questioned about whether he noticed anything about the basement or windows, Officer Stryker explained when he was leaving the residence he looked under the steps and saw one window covered with a curtain, not all of the windows. On cross-examination, the officer indicated, "I did not at any point in time say that all the windows were covered."

---

and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.' This standard was adopted by the Ohio Supreme Court in *State v. Roberts* (1980), 62 Ohio St.2d 170, 177, 405 N.E.2d 247 ." *State v. Parr,* Williams App. No. WM-07-007, 2008-Ohio-979 at ¶ 15, quoting *Franks* at 155-156.

**{¶32}** Further, we find the trial court's reliance on the electric company records regarding kilowatt usage to be improper. Although the records indicate Appellants' residence had a higher usage of electricity as compared to neighboring properties, the evidence presented revealed Holmes Wayne Electric did not have information regarding the square footage of, or types of, buildings on the neighboring properties. There was no way to know whether the properties being compared were similar. In fact, one of the buildings compared to Appellants' residence was a freezer barn. The accounting manager at Holmes Wayne Electric explained many variables exist which could affect the electric consumption of a property. Appellants' property had a consumption usage equivalent to the average consumption usage of Holmes Wayne Electric customers as a whole. As such, we find the averment relative to excessive usage in the affidavit was reckless.

**{¶33}** Pursuant to *Franks v. Delaware*, supra, when the evidence presented during a suppression hearing establishes a false statement was included by the affiant in the warrant affidavit, the false material must be excised. Then, the remainder of the affidavit's contents must be scrutinized for a determination of whether the affidavit still contains sufficient facts and supporting circumstances to establish probable cause in the eyes of a detached and neutral magistrate. See *State v. Waddy* (1992), 63 Ohio St.3d 424, 441, certiorari denied (1992), 113 S.Ct. 338.

**{¶34}** We find, if the false statements noted above are excised from the affidavit, the remaining content is insufficient to establish probable cause for the issuance of the search warrant.

{¶35} Based upon the foregoing, Appellants' sole assignment of error is sustained.

{¶36} The judgment of the Holmes County Municipal Court is reversed.

By: Hoffman, J.

Gwin, P.J.  and

Edwards, J. concur

_____

HON. WILLIAM B. HOFFMAN

_____

HON. W. SCOTT GWIN

_____

HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BROOKLYN BRYANT | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10CA019 |

For the reasons stated in our accompanying Opinion, the judgment of the Holmes County Municipal Court is reversed and the matter remanded to the trial court for further proceedings consistent with our Opinion and the law. Costs to Appellee.


s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee         :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
BRYAN DRONEBARGER                      :
                                       :
    Defendant-Appellant        :          Case No. 10CA020


For the reasons stated in our accompanying Opinion, the judgment of the Holmes County Municipal Court is reversed and the matter remanded to the trial court for further proceedings consistent with our Opinion and the law.  Costs to Appellee.


s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS