# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-31043
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
September 4, 2014

Lyle W. Cayce
Clerk

EXCO OPERATING COMPANY, L.P.,

Plaintiff–Appellee

v.

EVELYN ARNOLD; THEODORE ARNOLD; MARISSA BUTLER; GRETA TURNER BURTON; ARVETTA TURNER COLEMAN; ET AL; J'LYSHAE G. BURNS; JAMES EARL BURNS; PATRICE EBONY BURNS; LATAISHA ROCHELLE BURNS; AUDREY BURNS DUCHENE; DELESHA DAWN BURNS MAHONEY; SIBON PIERCE; ROMIE DENISE MORRIS; CHARLES EDWARD PIERCE; BARBARA BURNS ROBINSON; FREDERICK VAUGHN TURNER; HEZEKIAH TURNER, JR., EDDIE RAY TURNER, JR.; TYREE WAYNE TURNER; HARRY JAMES ZEHNER,

Defendants–Appellees

LLOYD TURNER,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC. No. 3:10-CV-1838

Before REAVLEY, JONES, and PRADO, Circuit Judges.

No. 13-31043

PER CURIAM:*

Plaintiff–Appellee Exco Operating Company ("Exco") filed an interpleader action in the district court to determine the identities of the rightful heirs to the proceeds from a mineral-producing property. The district court adopted the special master's recommendation that certain individuals were the rightful heirs, and that their claims were not time-barred. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves a unit of land located in Jackson Parish, Louisiana (the "Property"), owned by Ned and Nannie Turner. According to an October 18, 1932 Judgment of Possession found in Jackson Parish records (the "Judgment of Possession"), Ned Turner passed away on March 28, 1909. His wife Nannie Turner passed away on September 24, 1932. The Judgment of Possession recognized seven individuals as the heirs of Ned and Nannie Turner (the "Judgment Heirs").

Anadarko Petroleum Corporation ("Anadarko") contracted landmen to seek and obtain oil and gas leases to the Property. The landmen identified not only the Judgment Heirs, but three additional heirs—Jane Turner Pierce, Mattie Turner Henderson, and Willie Turner—that were not recognized in the Judgment of Possession (the "Other Heirs"). Anadarko paid proceeds from the Property to both groups of heirs and their successors and assigns. Exco continued to make these payments after it acquired all of Anadarko's right, title, and interest in the Property.

Lloyd Turner ("Lloyd"), a descendant of one of the Judgment Heirs, demanded an accounting of payments made from Exco, alleging that payments

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31043

were being improperly made to descendants of the Other Heirs.  In response, Exco filed an interpleader action.   Lloyd filed an answer and filed a reconventional demand for an accounting from Exco, seeking payments of amounts he alleges were improperly paid to the successors and assigns of the Other Heirs.

Upon motion by Exco, the district court appointed a special master to "examine the title and family records concerning the land at issue and assist this Court in making a determination of the ownership of the mineral interests and royalty money at issue."  In his Report and Recommendation, the special master determined as a matter of fact that "the Other Heirs, as well as the Judgment Heirs, are the descendants of Ned and Nannie Turner."  The special master also recommended the district court find, as a matter of law, that neither liberative prescription nor acquisitive prescription barred the Other Heirs, or their successors and assigns, from having their claims to the Property recognized.   Having considered the Report and Recommendation and the objections thereto, the district court adopted the special master's Report and Recommendation with a modification not relevant here.  Lloyd timely appeals.

## II.   DISCUSSION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1335.  Because Lloyd seeks review of a final judgment of the district court, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

This Court reviews factual findings of a special master, adopted by the district court, for clear error. *Marine Indem. Ins. Co. of Am. v. Lockwood Warehouse & Storage*, 115 F.3d 282, 287 (5th Cir. 1997) (citing Fed. R. Civ. P. 52(a)).  "[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility," Fed. R. Civ. P. 52(a)(6), and should reverse "under the clearly erroneous standard 'only if [it has] a definite and firm conviction that a mistake has been committed,'" *French v. Allstate*

3

*Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011) (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000)).  Therefore, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985); *see also United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949) ("[A] choice between two permissible views of the weight of evidence is not 'clearly erroneous.'").  "Questions of statutory interpretation are questions of law and thus reviewed de novo." *Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997).

Lloyd presents two issues on appeal.  First, Lloyd argues that the district court erred in finding that there was sufficient evidence that the Other Heirs were descendants of Ned and Nannie Turner.  Second, Lloyd argues that the Other Heirs were time-barred from asserting any claim to the proceeds of the Property.  We disagree with each argument in turn.

**A. There Was Sufficient Evidence to Recognize the Other Heirs**

"A judgment of possession is prima facie evidence of the right of the heirs in whose favor it was rendered to take possession of the decedent's estate; however, it is not . . . conclusive evidence against persons having an adverse interest in . . . the estate, such as heirs or creditors of the estate." *Quiett v. Estate of Moore*, 378 So. 2d 362, 367 (La. 1979).  Here, the district court did not clearly err when it found that the Other Heirs were the descendants of Ned and Nannie Turner, thereby overcoming the prima facie evidence of the Judgment of Possession.

In recommending that the Other Heirs were descendants of Ned and Nannie Turner, the special master relied upon a variety of evidence, including: census reports from 1880 and 1910; affidavits obtained by Anadarko's contracted landmen; and the testimony of Lucette Giles ("Giles"), the granddaughter of one of the Judgment Heirs, Wilson Turner.  After Ned passed

away, the 1910 census showed Nannie Turner as "Head of Household," with Jane Turner as "daughter" and Willie Turner as "son." The 1880 census showed Ned Turner as "Head of Household," "Annie" as "wife," Wilson as "son," Jane as "daughter," and Mattie as "son." The special master found that the Nannie referred to in the 1910 census and the Annie from the 1880 census were the same person, thereby supporting the finding that the Other Heirs—Jane, Mattie, and Willie—were descendants of Ned and Nannie Turner. This evidence, according to the special master, was consistent with the landmen's affidavits, which identified both the Judgment Heirs and Other Heirs. The special master also found that the census records were consistent with Giles's testimony that her grandfather, one of the Judgment Heirs, told her of his sister, Jane.

In opposition, Lloyd never cites the clear error standard, much less applies it. Rather, Lloyd simply attempts to muddy the available evidence. For example, Lloyd argues that there is no evidence that the Ned Turner in the 1880 census is the same Ned Turner at issue here. Moreover, Lloyd nitpicks that the "Jane" in the 1910 census is stated to be 30 years old, when in fact she would have been 33 at the time. Lloyd also provides an alternate theory of the census records, speculating that the Annie and Nannie referred to in the census records "were likely collaterals who live on adjacent property with husbands who had the same first name and last name."

Lloyd's argument would have us require that the special master's finding be supported by a perfect accounting of each and every heir. But this is not required on clear error review. Even if Lloyd's unsupported speculation were a permissible view, "a choice between two permissible views . . . is not 'clearly erroneous.'" *See Yellow Cab Co.*, 338 U.S. at 342. The district court did not clearly err when it found that the Other Heirs were descendants of Ned and Nannie Turner.

No. 13-31043

**B. The Other Heirs' Claims Are Not Time-Barred**

A limitations period in the common law is either liberative or acquisitive. *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 777 (5th Cir. 1997). Neither liberative prescription nor acquisitive prescription barred the Other Heirs' claims to the proceeds from the Property.

This Court has previously held that liberative prescription does not bar real actions such as the one here. *See Songbyrd*, 104 F.3d at 778 ("[L]iberative prescription does not bar *real* actions seeking to protect the right of ownership. . . . Thus, it is well established in Louisiana that the petitory action (for the protection of immovables) is *not* barred by liberative prescription." (citations and internal quotation marks omitted)). While Lloyd argues that *Songbyrd* was wrongly decided, he makes no attempt to cite any intervening change in law that would permit us to overturn a prior panel's decision. Accordingly, we must follow *Songbyrd* and hold that liberative prescription does not bar the Other Heirs' claims here. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law . . . .").

Lloyd also fails to point to any error in the district court's finding that acquisitive prescription did not apply. "Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." La. Civ. Code Ann. art. 3446. "In order for one coowner or coheir to prescribe against the other, his possession must be clearly hostile to the rights of the other" and he must have given notice to the other "of his intention to hold, animo domini, all of the common property." *Lee v. Jones*, 69 So. 2d 26, 28 (La. 1953).

The special master found that, under Louisiana Civil Code Article 962, the Other Heirs were presumed to have accepted the succession. *See* La. Civ.

6

No. 13-31043

Code Ann. art. 962 ("In the absence of a renunciation, a successor is presumed to accept succession rights."). Thus, according to the special master, Lloyd's claim of acquisitive prescription was against a coheir, but acquisitive prescription did not apply because there was no notice given to the Other Heirs sufficient to start the running of the acquisitive prescription period. The district court adopted these findings.

Lloyd argues that his claim of acquisitive prescription was not against a coheir because, prior to the 1997 enactment of Article 962, Louisiana law required acceptance of succession. Because the Other Heirs never accepted succession, Lloyd continues, notice was not required. However, Lloyd makes no argument that Article 962 does not apply to this case. We thus treat any argument that Article 962 does not apply as waived. *See, e.g.*, *In re Repine*, 536 F.3d 512, 518 n.5 (5th Cir. 2008) (finding argument waived "due to inadequate briefing" where appellant "fail[ed] to explain" the argument and did not "cite any authority to support her position" (citation omitted)). Having failed to establish that Article 962 does not apply here, Lloyd's sole argument for acquisitive prescription, based on Louisiana law pre-existing Article 962, must be rejected.

## III.    CONCLUSION

The judgment of the district court is AFFIRMED.